STRICKLAND *v.* THE STATE.

No. 15201.   OCTOBER 4, 1945.

*Harry M. Wilson* and *Herbert W. Wilson,* for plaintiff in error.
*T. Grady Head, attorney-general, John W. Bennett, solicitor-general,* and *N. J. Smith, assistant attorney-general,* contra.

CANDLER, Justice. The main question presented in this case is whether the court below erred in denying a motion by Leroy Strickland to withdraw his plea of guilty of murder and to vacate a judgment and sentence thereon of life imprisonment. The motion, in writing, was made during the same term of court at which the plea was entered and judgment pronounced. However, the motion was not made before judgment was pronounced, and the movant, as a matter of right, could not withdraw his plea in accordance with the provisions of the Code, § 27-1404. The judgment having been pronounced before the motion made at the same term, in such circumstances it seems to be well settled that the right to withdraw a plea of guilty is within the sound legal discre-

tion of the trial judge. *Sanders* v. *State,* 59 *Ga. App.* 748 (2 S. E. 2d, 144), and cit. In *Griffin* v. *State,* 12 *Ga. App.* 615 (77 S. E. 1080), where a judgment refusing leave to withdraw a plea of guilty was reversed, the Court of Appeals, speaking through Judge Pottle, construed the words, "judicial discretion," and said: "An appeal to a judge's discretion is an appeal to his judicial conscience. This discretion must be exercised, not in opposition to, but in accordance with, established rules of law. It is not an arbitrary power but one which must be exercised wisely and impartially. In its practical application in this State, judicial discretion is substantially synonymous with judicial power. . . The ruling so often made by the Supreme Court and this court that the discretion of a trial judge will not be controlled, unless manifestly abused, means simply that the reviewing court will not control his finding of facts upon conflicting evidence. If upon these facts an erroneous finding of law be rendered, the latter judgment will be set aside; but, if that judgment be sound as applied to his finding of facts, the reviewing court will not interfere. See *Jackson* v. *State,* 99 *Ga.* 209 (25 S. E. 177), where a judgment refusing leave to withdraw a plea of guilty was affirmed. It is really misleading to speak of the trial court's action as an abuse of discretion. Men's rights, both of person and of property, are regulated by fixed legal principles. In passing upon them, whether at law or in equity, the court must regard these principles. It has neither discretion nor power to do otherwise. If the judge fails to apply them in a given case, he has simply made an erroneous judgment, which can be corrected on review. Primarily a motion to withdraw a plea or set aside a judgment of conviction in a criminal case is addressed to the discretion of the presiding judge. He hears the reasons for the motion and the evidence in support thereof. If these reasons be good in law, and the evidence be undisputed, the matter is no longer one of discretion, but the motion prevails as a matter of legal right. . . The general rule is that in passing upon the facts whatever discretion the court has ought to be exercised liberally in favor of the prisoner. State *v.* Williams, 45 La. Ann. 1356 (14 South. 32)."

In the present case, it appears without dispute, that one Raulerson, who had been sheriff of the county where the case was pending and whose term of office expired about two weeks preceding

the plea was furnishing some assistance to the solicitor-general in the presentation of this case and other cases in which he had made an arrest or an investigation at the January term, 1945, of the court; and that, on the same day and before the plea was entered, Raulerson talked to Leroy Strickland at the jail and escorted him from the jail to the courtroom. There is some conflict between the evidence offered on the motion as to what Raulerson and Strickland said to each other. Strickland, in his affidavit introduced in his behalf on the motion, stated in this connection, "that shortly before deponent entered his plea of guilty with recommendation, around 5 o'clock p.m. on the 15th day of January, 1945, ex-sheriff Raulerson told deponent that he did not have a chance if he pleaded not guilty; that deponent became frightened, took what ex-sheriff Raulerson had said that, if deponent did not plead guilty with recommendation, . . he would be convicted and electrocuted, and deponent in that frame of mind, being scared, under torture of fear, ignorant and [under] coercion, . . on the 15th day of January, 1945, entered his plea of guilty." On the subject of the conversation with Strickland, ex-sheriff Raulerson, in his affidavit introduced in evidence on behalf of the respondent, deposed: "That when the court met and during court deponent went to the jail for the purpose of finding out what the said Leroy Strickland wanted to do, as the State had to get ready for trial in the matter. Deponent said to Leroy Strickland, 'We are about ready to dispose of your case, and I want to know what you want to do.' I then asked Leroy Strickland whether he wanted to plead guilty or stand trial. Leroy Strickland said that Ralph Dawson, an attorney, was supposed to be there to represent him, and deponent then advised Leroy Strickland that no such attorney had been at court and that he wasn't there. The said Leroy Strickland then asked deponent what he would get if he plead guilty, and deponent replied that the judge would have to give him life imprisonment. The said Leroy Stickland then said, 'I'm ready to go over there and get it over with.'"

J. W. Crews, the sheriff who took office January 1, 1945, made an affidavit, which was introduced in evidence on behalf of the respondent on the motion and deposed: "From time to time when deponent went to feed the prisoners, Leroy would talk to deponent about the case, and on one occasion said that he was sorry that he

had got into it, but that he had killed a man and there was not any use for him to fight the case. He said that he did not want a lawyer because it would not do him any good to fight the case. None of these statements as made by Leroy were in any way influenced by deponent, and as a matter of fact deponent did not discuss the case at length with Leroy, but . . Leroy would always mention it to deponent when he would go into the jail for feeding the prisoners. Leroy did ask deponent on one occasion, unsolicited in any way by deponent, what he would get if he plead guilty, and deponent told him he would get life."

It was shown without dispute in the pleadings and evidence on the motion that Strickland at the time of the plea was 17 years of age and had only a third-grade education. Although the evidence for the movant is not very clear in establishing his allegation that up to January 15, 1945, or the date of the plea, he believed that he would have the services of an attorney at law to represent him, the affidavit of ex-sheriff Raulerson and the statement of the respondent solicitor-general of the Waycross Judicial Circuit, which was introduced in evidence by agreement of counsel, both substantiate that contention. The statement of the solicitor-general is as follows: "About ten days before the January term of Brantley superior court, I had a conversation with Mr. Ralph Dawson, who is solicitor-general of the Atlantic Circuit, in Georgia, and he stated to me that some parties, without naming them, had approached him about representing a Strickland boy in Brantley County, who was charged with murder. He stated that he advised them he could not accept employment because he was solicitor-general. This conversation occurred in the lobby of the Piedmont Hotel in Atlanta, Georgia, was unsolicited by me, but was a statement voluntarily made by him to me." On cross-examination, the solicitor-general said: "So far as I know that information was never communicated to Leroy Strickland. I did state that Mr. Dawson said he told the parties who had approached him that he could not represent him; he did not say anything as to whether a fee had been paid. He said they were ready to pay him a fee, but that he could not accept it. It will be admitted that at the time the conversation took place Leroy Strickland was confined in jail."

To one having knowledge of court procedure and the duties of

solicitors-general in this State, it might not seem reasonable that a defendant charged with crime in one judicial circuit could obtain the services of a solicitor-general of another judicial circuit in the same State to represent him. However, to a person 17 years of age with only a third-grade education and inexperienced, such an understanding or belief on the part of Leroy Strickland, who was under those impediments, is possible, and it is probable that he believed he could obtain the services of such an attorney. The circumstances shown by the evidence add up to the fact that in some manner some person or persons sought counsel for Strickland, of which the latter had some knowledge leading him to the belief that he would have counsel to represent him. When he was brought into court, it does not appear positively that the trial judge interrogated him as to whether he had counsel or desired counsel, but in this connection there is attached to the record a certificate of the trial judge appearing on the hearing of the motion as follows: "In re: plea of guilty of Leroy Strickland at January term, 1945, of the Superior Court of Brantley County, Georgia. I, the presiding judge of the Superior Court of Brantley County, Georgia, in the Waycross Judicial Circuit, do state the following in connection with the taking of a jury verdict of guilty, with a recommendation of life imprisonment on the part of the defendant, Leroy Strickland. This defendant was brought into open court and was asked by me whether or not he wished to enter a plea of guilty or not guilty to the charge of murder against him. In answer to this question, the said Leroy Strickland stated that he would enter a plea of guilty. It is customary practice for me as the presiding judge to ask each defendant whether or not he has a lawyer. This defendant, Leroy Strickland, did not request a lawyer and did not give the court any indication that he wanted a lawyer, and his act of entering the plea in said case was, so far as any facts brought to my attention, his own individual act. A jury of twelve was empaneled and a verdict of guilty with recommendation for life imprisonment was rendered by said jury. This certificate of facts is made for the purpose of a hearing on an application of Leroy Strickland to be permitted to withdraw his plea of guilty."

It is well settled that under proper circumstances a defendant may voluntarily plead guilty to any offense, including murder.

Code, § 27-1404. *Sarah* v. *State,* 28 *Ga.* 576. However, there are certain jealous safeguards which the law has evolved surrounding a plea of guilty. In *Griffin* v. *State,* supra, it was said: "A plea of guilty is but a confession of guilt in open court and a waiver of trial. Like a confession out of court, it ought to be scanned with care and received with caution. The judge is not bound to receive such a plea at all, and in capital cases frequently declines to do so. Indeed, Blackstone says that in this class of cases the court ought generally to advise the prisoner to retract his plea and plead to the indictment. 4 Bl. Com. 329. A plea of guilty ought never be received, unless it is freely and voluntarily made; and if the prisoner is misled, or is induced to enter his plea by fraud, or even by mistake, he ought to be allowed to withdraw the plea. The law favors a trial on the merits. *Gauldin* v. *Crawford,* 30 *Ga.* 674 (5). It does not encourage confessions of guilt, either in or out of court. Affirmative action on the part of the prisoner is required before he will be held to have waived the right of trial, created for his benefit. If he refuses to plead, the court pleads not guilty for him, and he is put upon his trial. The affirmative plea of guilty is received because the prisoner is willing voluntarily, without inducement of any sort, to confess his guilt and expiate his offense. In some States statutes have been enacted requiring the judge to admonish the prisoner of the consequences before receiving his plea; and it is good practice and in the interest of fairness to do this, even though there is no statute requiring it. There are many cases in the books, and in none of them has the right to withdraw the plea been denied, when it was shown that it was not entered freely and voluntarily and with a full understanding of the consequences which might follow."

In this case, there seems to be a combination of circumstances compelling the just conclusion that Leroy Strickland did not enter his plea under those conditions which would deny him the right to withdraw it. The evidence as to the conversations of Strickland and ex-sheriff Raulerson, of Strickland and sheriff Crews, together with the attending circumstances of the official or semi-official connection of the ex-officer and the incumbent officer with the prosecution of the case, speaks loudly in support of the contention of Strickland that he entered his plea of guilty because of fear arising from the words of the ex-sheriff and of the incumbent sheriff that

a punishment more serious than life imprisonment would be meted out to him. Nothing is shown in the record as to any authority of the ex-sheriff or of the incumbent sheriff to make any commitment for the court or the solicitor-general to the effect that he would get life imprisonment if he pleaded guilty of murder.

Nevertheless, in the mind of a boy with meager education, the impact of statements made to him by the ex-sheriff and the sheriff was extremely forceful if not compelling. The prisoner was confined in jail the whole period from his arrest until the time he entered his plea. His belief that he was to have counsel employed for him had a real basis for support. He was not specifically interrogated in actual words by the trial judge as to whether he had counsel or whether he wanted counsel. Although the judge did empanel a jury, it was ostensibly to relieve the judge of imposing the death sentence if the jury should recommend life imprisonment, and not for a full and complete presentation of his defense to such jury, with an attorney at law to represent him. The entry by Strickland of the words, "I consent," underneath the verdict did not cure the lack of observance of his rights in taking and entering the plea. We are not now concerned with any question as to whether on the trial of the case on its merits the defendant charged with murder is guilty or innocent. We are only dealing with the question of the denial by the trial judge of the motion to withdraw the plea of guilty, and to set aside and vacate the verdict, judgment and sentence. For all of the reasons set out hereinabove, we think that the trial judge exceeded his judicial discretion and erred in denying the motion. Let the verdict, judgment and sentence of the trial court against Leroy Strickland be vacated and set aside, let the plea of guilty be withdrawn, and let the accused be arraigned as though no plea had been entered.

*Judgment reversed. All the Justices concur, except Atkinson, J., who dissents, and Head, J., disqualified.*