34990.   BANKERS LIFE & CASUALTY COMPANY *v.*
CRAVEY, Comptroller-General.

Decided May 11, 1954.

116

118

*Alex McLennan*, for plaintiff in error.

*Eugene Cook, Attorney-General, Lamar Sizemore, Assistant Attorney-General, B. D. Murphy,* contra.

QUILLIAN, J. We first consider whether the plaintiff was entitled to a declaratory judgment as prayed in prayers (c) and (e) of its petition. These two prayers simply invoke the decree of the court, first, that it has, though unlicensed by any authority of the State of Georgia, the right to write insurance in the State, on account of its contention that the Comptroller-General wrongfully refused it a license to do business legally in the past and up to the time of the filing of the petition; and secondly, that for the same reasons it may continue in the future to write insurance in Georgia though unlicensed by any authority of this

State. The first question is moot because the time referred to in the first prayer, namely the time before and up to and including the filing of the petition is past, and was immediately after the petition was filed. The courts do not concern themselves with the solution of academic problems or the determination of dead issues. "If an action for a declaration raises issues which are fictitious, colorable, hypothetical, abstract, academic, or dead, and hence moot, the Georgia statute is not applicable, and the action must be dismissed as decisively as would be any other action presenting the same non-justiciable issues." *Felton* v. *Chandler*, 75 *Ga. App.* 354 (7) (43 S. E. 2d 742).

The second question presented no question for consideration by the court for a variety of very simple reasons: (a) No one was disputing, or so far as the record discloses, threatening to question the legality of the plaintiff's conduct in writing insurance in the State without a license; and while the impropriety of doing so may have itself suggested apprehension that the authorities would sooner or later call the plaintiff to account, there was no controversy of a justiciable nature or otherwise existing at the time the petition was filed. There must be an actual controversy in order for the courts to entertain a petition for declaratory judgment. "The word 'actual' preceding the word 'controversy' in section 1 of the act, is a word of emphasis, and not of definition. The word 'controversy' within itself contemplates a justiciable controversy. 16 Am. Jur., 285, § 10; Borchard on Declaratory Judgments (2d ed.), p. 40. The words '[legal] rights, [legal] status, and other legal relations,' of section 13 of the act are dependent upon an 'actual controversy' in a proceeding for declaratory judgment. . . A controversy is justiciable when there are 'interested parties' asserting 'adverse' claims (Borchard on Declaratory Judgments, 2d ed., p. 36; 16 Am. Jur., 284, § 10) upon a state of facts which must have accrued, wherein a legal decision is sought or demanded. 'For the principle of a declaratory judgment is that it declares the existing law on an existing state of facts. The danger or dilemma of the plaintiff must be present, and not contingent on the happening of hypothetical future events.'" *Brown* v. *Lawrence*, 204 *Ga.* 788, 791 (51 S. E. 2d 651).

While the courts, upon proper application for guidance, look

into the future and give to the parties such directions as in the interest of justice they are entitled to, it is not the function of the courts to look into the future for the facts and declare what legal status will exist, what relationships will be involved, or what acts will be within or without the law. It is difficult enough in many instances for them to decide these matters on facts shown to presently exist; but it is patently impossible for the judges to give directions by decree, predicated upon anticipated events that may or may not occur. *Brown* v. *Lawrence,* supra.

So, we observe, it would be impossible for a decree to be so moulded as to incompass future contingencies. Giving answers to legal questions based on future events is to answer hypothetical questions. This the court declines to do. "The statutes relative to declaratory judgments do not as a rule contemplate declarations upon remote contingencies or as to matters where the interest of the plaintiff is merely contingent upon the happening of some event in the future. Hence, the courts will not, ordinarily, attempt to decide or declare the rights or status of parties upon a state of facts which is contingent or uncertain or until the question as to which a declaration is sought has actually arisen. This rule is similar to the one observed where the guidance of an equity or probate court is sought under the practice which prevails independent of declaratory judgments statutes. In accordance with this view, it has been held that the Federal Declaratory Judgments Act cannot be invoked in order to obtain an advisory decree upon a hypothetical state of facts which may never become real." 16 Am. Jur. 293, Declaratory Judgments, § 19.

What is written here does not mean that, if the happening of the future event is certain in the order of nature, such as the passing of the seasons, certainty of death at some time, or the assurance that a tax will be levied in some amount, the court may not assume and predicate its decrees on those events as though presently existing.

The remedy of declaratory judgment is open to no litigant who has as complete and adequate a remedy at law or in equity as is afforded by a declaratory judgment, and it is not available where no peculiar facts or circumstances render the remedy of declaratory judgment better adjusted to the situation than other

remedies available to the plaintiff. The plaintiff has such remedy in this case by following the procedure prescribed by Code §§ 56-419 and 56-422, providing for application to the Comptroller-General for a license and hearing before that official as to the plaintiff's right to have the license issued to it, and the remedy of mandamus is open to the plaintiff to compel the Comptroller to issue it a license, provided it is legally entitled to be licensed. *Findley* v. *City of Vidalia,* 78 *Ga. App.* 581 (51 S. E. 2d 542); *City of Summerville* v. *Sellers,* 82 *Ga. App.* 361 (61 S. E. 2d 160).

Prayer (b) of the petition is that the plaintiff be directed as to whether it should pay certain money to the Comptroller. The petition does not show that any demand had been made for the money or claim laid to it by the Comptroller named in the suit, or that even a threat to collect it had been made by him. There was no semblance of a controversy in reference to the payment of that money, and the trial court correctly held there was none.

Prayer (d) of the petition seeks direction as to the payment of taxes already paid, the recovery of which, if the defendant has any right to recover then, is amply provided for by statute. Moreover, it does not appear from the petition that any demand has been made for these taxes or that there is any controversy concerning them.

The other prayers of the petition were merely for process and general relief.

The best reason for the trial court's correct decision not to entertain the petition applies to the petition as a whole and all of its prayers. It is well established that it is not necessary that a petition praying for a declaratory judgment set out a good cause of action so as to entitle one who brings it to the relief of either legal or equitable nature, in order to entitle the petitioner to direction by the court. "(a) In cases of actual controversy the respective superior courts of the State of Georgia shall have power upon petition, or other appropriate pleading, to declare rights, and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such. (b) In addition to the cases specified in paragraph (a) of this section,

the respective superior courts of the State of Georgia shall have power upon petition, or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, in any civil case in which it appears to the court that the ends of justice require that such declaration should be made, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such." Code (Ann. Supp.) § 110-1101 (a) and (b). Nevertheless, a party is not entitled to a declaratory judgment if he has no present right to protect or right to a directive decree to guide him with respect to some future act or conduct which is properly incidental to any of his alleged rights, and which future action without such direction might jeopardize his interest. In this case the plaintiff does not allege that it either has complied or intends to comply with the laws of this State regulating the issuance of licenses to insurance companies, and does not attack these laws as unconstitutional or otherwise invalid. It does claim that the constitutional provision contained in paragraphs I, II, and V, of art. IV, section VI (Code, Ann., §§ 2-2901, 2-2902 and 2-2905) means that no requirements other than the deposit of the $100,000 with "the Comptroller-General of the State in which they are chartered, or of this State, the Insurance Commissioner, or such other officer as may be authorized to receive it," can be prescribed by statute as a prerequisite to the issuance of a license to it. The plaintiff also contends that the quoted constitutional provision not only authorizes the Comptroller-General to issue it a license, but makes it mandatory upon him to do so. These contentions are palpably unsound, for there is nothing in the Constitution that limits the authority of the legislature to enact, as it has, laws providing for a proper application to the Comptroller for a license to write insurance, and for his examination and determination of whether such license will be granted on the basis of the insurance company's having complied with the laws of this State regulating the business of insurance.

Code (Ann.) § 56-418 provides that "The Insurance Commissioner shall consider the application, and if, upon consideration of the facts set forth in the application, the financial statement of the company and such other evidence as he may require, he

shall determine that the company has fully complied with the laws of Georgia regulating the business of insurance, and is satisfied that the financial statement of the company is correct, that it is maintaining proper reserves, is solvent, and has invested its reserves in sound assets, and if he is of the opinion that the company's financial condition and affairs are sound and such that its transaction of business will not be hazardous to its policyholders, its creditors or the public, he shall issue a license to the company to transact business in this State." Section 56-422 provides for a fair hearing before the Insurance Commissioner as to whether a license will be granted a company, and § 56-9905 provides for the punishment of those who write insurance in this State for an unlicensed company. The wording of the constitutional provision is so plainly to the effect that the Comptroller-General is *authorized* but not required to issue a license when only the condition as to the deposit of $100,000 therein required is complied with, that it requires no construction. In these circumstances, one who has every question for which he seeks solution plainly answered by our Constitution and statutes needs no guidance in the nature of a declaratory judgment.

The plaintiff in error maintains that it was entitled to have a declaratory judgment rendered by the superior court, directing it as to whether, in view of the fact that it had no license for a period of time during which it did actually write insurance and collect premiums, it owed premium taxes on the business done during that time. It contends that this issue relates to events transpiring in the past, upon which the decree of the courts could have been entered without speculation.

The theory might be advanced that this question is not moot, because the plaintiff in error desires direction in reference to its liability to pay taxes in the future if no license is granted it. The complete answer to this is that, where a statute is so plain and unambiguous as not to be susceptible to any logical construction except its unmistakable mandate, there is no need of a declaratory judgment. The requirement of the law contained in Code § 92-2509.1 is so palpable and explicit that premium taxes are to be paid by a company doing business in this State, and so lacking in any intention that a company illegally transacting such business should be relieved of the taxes, that it would be

124

vain and useless for the court to have undertaken to construe it.

In view of what is said above, the judge of the superior court did not err in sustaining the general demurrers and in dismissing the petition.

*Judgment affirmed. Nichols, J., concurs, and Felton, C. J., concurs in the judgment.*