A95A1729. IN THE INTEREST OF I. B., a child.

(464 SE2d 865)

BEASLEY, Chief Judge.

On September 13, 1993, officials at I. B.'s school noticed that he had bruises on his neck and back and reported that fact to county officials. I. B. told the investigating officials that his father had slapped and kicked him. No criminal charges were brought, nor was a deprivation petition filed, but the father's name was placed on the child abuse registry maintained by the Division of Family & Children Services of the Georgia Department of Human Resources. See OCGA § 49-5-180 et seq.

The following May, the father petitioned the juvenile court to expunge his name from the child abuse registry, pursuant to OCGA § 49-5-184 (c). He also challenged the constitutionality of the statute establishing the registry and by amendment to the petition explained his grounds on that issue. In an order dated November 1, 1994, the court granted the petition to expunge the name after finding that there was no reasonable basis for it to be maintained on the registry. In a later order, after receiving briefs on the constitutionality issue, the court declared the father's challenge to be moot and not subject to an exception recognized in *Chastain v. Baker*, 255 Ga. 432 (339 SE2d 241) (1986). It thus did not rule on the issue and ended the matter on that note.

Appeal was taken to the Supreme Court of Georgia on the ground that the Georgia Constitution, Art. VI, Sec. VI, Par. II (1), gave it exclusive jurisdiction for the reason that the appeal involved the constitutionality of a statute. The Supreme Court held that it did not have jurisdiction because the only issue raised was the legal validity of the trial court's ruling, and it transferred the appeal to this Court, citing *Alexander v. State*, 239 Ga. 810 (239 SE2d 18) (1977). In that case, which did not result in transfer, the Supreme Court refused to rule on the constitutionality of two statutes because the challenge was raised for the first time on appeal; the trial court had not ruled on it, and thus there was no ruling to review. In other words, the prescribed process for attacking the constitutionality of a statute was not followed, so the issue was not decided.

That, of course, is not the same situation here. Appellant did raise the issue in the trial court, but a ruling was aborted. The court deemed the issue moot and not saved by the practical consideration that the court perceived sometimes justifies deciding a moot issue, i.e., that it is "capable of repetition yet evades review."

The question, then, is whether the trial court was deprived of jurisdiction by circumstances which occurred after the petition was filed, or whether the petitioner was entitled to a ruling on the constitutionality issue. To answer the question, we must consider the extent

of the trial court's authority. Is judgment foreclosed when the issue is moot, or is there an exception which either compels the court to rule or which allows the court to exercise discretion to rule in spite of its mootness? We must decide this in order to know whether to apply the abuse of discretion standard or a legal error standard. Compare *Central of Ga. R. Co. v. Lightsey*, 198 Ga. App. 59, 60 (1) (400 SE2d 652) (1990) (application of abuse of discretion standard, which " 'has been described as allowing a range of choice for the (lower) court, so long as that choice does not constitute a clear error of judgment. (Cit.)' "); *Harper v. Landers*, 180 Ga. App. 154, 157-158 (348 SE2d 698) (1986) (application of plain error standard, leading to conclusion that trial court erred "as a matter of law"). *Mills v. State*, 188 Ga. 616, 624-625 (4 SE2d 453) (1939), discusses the exercise of judicial discretion versus deciding questions of law, and *Strickland v. State*, 199 Ga. 792, 795-796, 801 (35 SE2d 463) (1945), measures a trial judge's exercise of discretion by the appellate standard of error of law and concludes that the trial court's decision exceeded the bounds of his judicial discretion and constituted a legal error. See also Court of Appeals Rule 27 (a) (3) and (b) (2).

First, there is no question that a trial court cannot issue advisory opinions. Throughout Article VI of the Georgia Constitution, jurisdictional authority is given over "cases."[1] "Cases" are live disputes, actual controversies.[2] "Not even in a declaratory judgment action is the court permitted to render an advisory opinion. [Cit.]" *McDowell v. Judges Ex Officio*, 235 Ga. 364, 365 (219 SE2d 713) (1975). The Declaratory Judgment Act itself makes that plain, by allowing only "[i]n cases of actual controversy" what otherwise might be considered advisory opinions. See *Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312 (3) (66 SE2d 726) (1951); *Brown v. Lawrence*, 204 Ga. 788, 790 (51 SE2d 651) (1949). As noted in *Felton v. Chandler*, 75 Ga. App. 354, 361 (43 SE2d 742) (1947), "if an action for a declaration raises issues which are . . . moot, the Georgia statute is not applicable, and the action must be dismissed as decisively as would be any other action presenting the same non-justiciable issues."

The role of the judiciary is to address "justiciable cases." *Thompson v. Talmadge*, 201 Ga. 867, 874 (1) (41 SE2d 883) (1947). "A controversy is justiciable when it is appropriate for judicial determination. It must be definite and concrete, touching the legal relations of parties having adverse legal interests, rather than being hypothetical,

---

[1] "Suits against" is the term in the Venue section; this by its nature means a live controversy.

[2] The jurisdiction delegated to the juvenile courts is over certain "matters" and "cases," OCGA § 15-11-5; the jurisdiction of superior courts is over "all causes, both civil and criminal. . . ." OCGA § 15-6-8 (1).

abstract, academic or moot." *Allstate Ins. Co. v. Shuman*, 163 Ga. App. 313, 315 (3) (293 SE2d 868) (1982). "A controversy is 'justiciable' when there are interested parties asserting adverse claims upon an accrued state of facts. [Cit.]" *Mayor &c. of Savannah v. Bay Realty Co.*, 90 Ga. App. 261, 262 (1) (82 SE2d 710) (1954). *Bankers Life &c. Co. v. Cravey*, 90 Ga. App. 113, 119 (82 SE2d 150) (1954), clearly states: "The courts do not concern themselves with the solution of academic problems or the determination of dead issues."

Even more recently, the Supreme Court implied that moot matters pending before trial courts should not be decided, in *Hutchinson v. Composite State Bd. of Med. Examiners*, 263 Ga. 186 (1) (429 SE2d 661) (1993). The trial court refused to consider a moot issue, and the Supreme Court agreed with the trial court that it was moot. It did not say the trial court should have considered ruling anyway on the basis of the repetitive yet evading review test. Instead, it applied the test to its own jurisdiction, intimating that it was a test of *appellate* review.

Likewise in *Bowers v. Bd. of Regents &c. of Ga.*, 259 Ga. 221 (378 SE2d 460) (1989), where the Court noted that a moot issue "most assuredly would result in a second dismissal by the trial court, this time on the ground of mootness." See also *Mulling v. Wilson*, 245 Ga. 773, 774 (267 SE2d 212) (1980), which addresses the trial court's ruling that an issue before it was not moot.

The same parameter of judicial power exists in the appellate courts, at least statutorily. The Appellate Practice Act compels both courts to dismiss appeals "[w]here the questions presented have become moot." OCGA § 5-6-48 (b) (3). *Chastain*, supra, 255 Ga. at 433. As recently repeated by the Supreme Court in *Cheeks v. Miller*, 262 Ga. 687, 688 (425 SE2d 278) (1993): " 'The existence of an actual controversy is fundamental to a decision on the merits by this court.' *Bowers*[, supra]. A controversy is justiciable when it is definite and concrete, rather than being hypothetical, abstract, academic, or moot. *Board of Trustees v. Kenworthy*, 253 Ga. 554, 557 (322 SE2d 720) (1984). Similarly, federal courts employ the doctrine of 'ripeness' under the Article III requirement of a 'case or controversy.' See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction No. 2d, § 3532." Although "case and controversy" language is not included in the Georgia Constitution, an actual controversy must exist, or the issue is moot for appellate review. *Bowers*, supra.

It would be anomalous if the law allowed a pleader to hurdle the mootness bar in the trial court and obtain an advisory opinion which is not reviewable by the appellate court because the bar is placed in the way at that level. In this case we could have a decision of a juvenile court, a court of limited jurisdiction under the Constitution, declaring a state statute unconstitutional, but its decision would not be

reviewable by the state's highest court, which has exclusive appellate jurisdiction of such issues. 1983 Ga. Const., Art. VI, Sec. III, Par. I, and Sec. VI, Par. II (1).

Having established that judicial jurisdiction does not encompass moot issues, we now address whether the case was moot when the trial court declined to address the constitutional issue. It certainly was, insofar as petitioner himself was concerned. His name was ordered expunged, and this was the only substantive personal relief he sought, other than attorney fees. " ' "A moot case is one which seeks to determine an abstract question which does not arise upon *existing* facts or rights." ' [Cit.]" *Atlanta Gas Light Co. v. Ga. Public Svc. Comm.*, 206 Ga. App. 315, 316 (425 SE2d 340) (1992). But, argued petitioner, the issue is *not* moot because "the facts are capable of repetition and yet evade review," citing *Chastain*, supra, 255 Ga. 432. The trial court refused to decide the issue and made a subtle but important distinction in its analysis. It found that petitioner's challenge was moot "and does not fall within the narrow exception of cases which although moot, are capable of repetition, yet evade review." It, too, cited *Chastain*, 255 Ga. 432. The distinction is notable because the trial court viewed there being an *exception* to the mootness doctrine, which if it exists would allow the court to render an advisory opinion. It did not find that this case fit within what it understood is an exception.

The same view is expressed in *Chastain*, 255 Ga. 432: "Of course, a case may be moot, but, because the error is capable of repetition *and yet evades review*, the appeal will be considered." Id. at 433. Which is the correct view, that in order to be decided, an issue must not be moot period or that it may be moot but come within an exception? Because advisory opinions are forbidden, it must be found that the issue is not moot. The two factors to be considered test mootness; they do not carve out an exception. Although the Georgia appellate courts, in developing and applying the "capable of repetition yet evading review" test for justiciability, purportedly created an exception, they have depended repeatedly on the opinions of the United States Supreme Court. That Court fashioned the doctrine to address more realistically the definition of "moot."

The first appearance of the test in Georgia's jurisprudence was not until 1974. *Hudgens v. Local 315 &c.*, 133 Ga. App. 329, 331-332 (210 SE2d 821) (1974), was a declaratory judgment case, which expressly requires an actual controversy. It cited as its sources *Southern Pacific Terminal Co. v. Interstate Commerce Comm.*, 219 U. S. 498 (31 SC 279, 55 LE 310) (1911), and *Super Tire Engineering Co. v. McCorkle*, 416 U. S. 115 (94 SC 1694, 40 LE2d 1) (1974). In applying the test in *Hudgens*, this court rejected the argument that the case avoided mootness, which was made on the ground that the problem

was " 'capable of repetition yet evading review.' " *Hudgens*, supra at 332.

In *Southern Pacific Terminal Co.*, involving a bill in equity to enjoin an administrative order, the United States Supreme Court refused to dismiss the appeal because it determined that the circumstances were such that the controversy was not moot nor the question terminated by the intervening expiration of the challenged ICC cease and desist order. It reasoned: "The question involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at bar), and these considerations ought not to be, as they might be, defeated, by short-term orders, capable of repetition, yet evading review, and at one time the government, and at another time the carriers, have their rights determined by the Commission without a chance of redress." Id. at 515. Thus, the doctrine narrowing the definition of "moot" was first articulated.

*Super Tire Engineering Co.*, supra, the other case depended on by the Georgia Court of Appeals, was decided the same year as *Hudgens*. It, like *Hudgens*, involved a petition for a declaratory judgment. The United States Supreme Court found the issue was not moot because, although the labor strike had been settled, the issue involved an extant and fixed and definite state government policy directive which affected the collective-bargaining relationship of petitioners and others in the management position. Thus, concluded the Court, its exercise of jurisdiction did not violate the "case or controversy" requirement of the United States Constitution's Art. III, Sec. II or the Declaratory Judgment Act. *Super Tire Engineering Co.*, supra at 121-124.

The year before, the Court had applied the *Southern Pacific Terminal Co.* doctrine in *Roe v. Wade*, 410 U. S. 113, 124-125 (93 SC 705, 35 LE2d 147) (1973): "Pregnancy provides a classic justification for a conclusion of nonmootness."

*Storer v. Brown*, 415 U. S. 724, 739 (fn. 10) (94 SC 1274, 39 LE2d 714) (1974), an election case earlier in the same term of court as *Super Tire Engineering Co.*, recites that the case is not moot because the circumstances are such that even though no effective relief can be provided to the immediate parties, the issue is justiciable because it is not only capable of repetition with respect to others, but it will also evade review.

A week later, in *DeFunis v. Odegaard*, 416 U. S. 312 (94 SC 1704, 40 LE2d 164) (1974), the Court explained the limited applicability of the doctrine and concluded that it did not save DeFunis's claim from mootness and thus nonjusticiability under Article III of the Constitution. The Court noted that DeFunis "did not cast his suit as a class action." Id. at 317.

The next year, in *Sosna v. Iowa*, 419 U. S. 393 (95 SC 553, 42

LE2d 532) (1975), the Court held that an issue is not moot in federal law if a controversy exists between a defendant and a member of the class represented by a plaintiff, even if the claim of the named plaintiff has become moot. Id. at 402. It was therefore justiciable.

In a class action case a month later, *Gerstein v. Pugh*, 420 U. S. 103 (95 SC 854, 43 LE2d 54) (1975), the Court was not concerned with whether any member of the class still had a live controversy. It exercised jurisdiction over the issue because, by its transient nature, it could always be moot by the time it was acted on judicially and yet it related to circumstances in which there always would be people with such a claim. Id. at 110, fn. 11.

Jurisdiction was found to exist in *Gannett Co. v. DePasquale*, 443 U. S. 368, 377 (99 SC 2898, 61 LE2d 608) (1979), because the controversy between the parties was not moot even though the order attacked had expired. To meet the *Southern Pacific Terminal Co.* test, the Court repeated two conditions it had earlier articulated: " '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again' " quoting from *Weinstein v. Bradford*, 423 U. S. 147, 149 (96 SC 347, 46 LE2d 350) (1975).[3]

Thus, if we trace the doctrine forward from its origin in the United States Supreme Court through representative opinions, it is abundantly evident that the term "moot" is narrowly construed, sometimes to exclude from mootness a discrete universe besides the immediate parties, such as a certified or even an inherent class, in applying the test created to avoid mootness and thus loss of jurisdiction due to nonjusticiability.

Intrinsically insufficient time to obtain judicial relief for a claim common to an existing class of sufferers is the thread which runs through the cases in which the Supreme Court has found that the issue is not moot. It justifies the judicial doctrine related to jurisdiction, without which a decision would otherwise be foreclosed as resulting in an unauthorized advisory opinion because it does not resolve a "case or controversy" or a "live controversy."

On the other hand, the Georgia appellate courts have construed the term "moot" broadly, focusing generally on the named party who is seeking redress, and ostensibly have created an exception to mootness so as to retain jurisdiction anyway. *Chastain*, supra, 255 Ga. at 433, illustrates this in the Supreme Court: "[A] case may be moot,

---

[3] In a line of criminal cases where the sentence expired before full adjudication of appellant's claim, the United States Supreme Court developed the doctrine which avoids mootness by recognizing that criminal conviction "entail[s] adverse collateral legal consequences." *Sibron v. New York*, 392 U. S. 40, 55-58 (88 SC 1889, 20 LE2d 917) (1968).

but, because the error is capable of repetition and yet evades review, the appeal will be considered. [Cits.]" (Emphasis omitted.) According to *Chastain*, 255 Ga. 432, if the question is moot on appeal, the case need not be dismissed despite the mandate of OCGA § 5-6-48 (b) (3) if the alleged error "is capable of repetition and yet evades review." (Emphasis omitted.) Also illustrative is *Bowers*, supra, especially in footnote 1: "A narrow exception to the actual controversy rule is that the question is 'capable of repetition, yet evading review.' This case does not fit within that exception. . . ." The Court cites its opinion in *Chastain*, 255 Ga. 432, and the United States Supreme Court opinion in *DeFunis*.[4]

This Court followed suit in *Froelich v. State*, 210 Ga. App. 647, 649 (437 SE2d 358) (1993), where it conceded that the issue was moot as to petitioners, applied the test, and concluded: "We therefore cannot say that an advisory opinion is mandated in the case sub judice," citing *Chastain*, 255 Ga. 432. In *United Food &c. Union v. Amberjack, Ltd.*, 253 Ga. 438 (321 SE2d 736) (1984), the court agreed that the issue was moot but decided to "proceed to decide the issue recognizing that it is capable of repetition yet evades review." But it cited *Gerstein*, supra. See also *In the Interest of J. B.*, 199 Ga. App. 593 (405 SE2d 574) (1991); *Chastain v. Baker*, 178 Ga. App. 649 (344 SE2d 472) (1986), on remand.

So viewing mootness runs counter to the historical prohibition against advisory opinions. Other cases taking this anomalous two-step approach are: *Caldwell v. Bateman*, 252 Ga. 144, 145-146 (1) (312 SE2d 320) (1984); *Poythress*, supra at 453 (1);[5] *Wood v. Cole*, 249 Ga. 389 (290 SE2d 927) (1982); *Citizens for Ethical Govt. v. Gwinnett Place Assoc.*, 260 Ga. 245 (1) (392 SE2d 8) (1990); *Bond v. Parten*, 206 Ga. App. 88, 90 (424 SE2d 353) (1992); *Atlanta Gas Light Co.*, supra, 206 Ga. App. at 317; *Atlanta Gas Light Co. v. Ga. Public Svc. Comm.*, 212 Ga. App. 575, 577 (1) (442 SE2d 860) (1994); *Hutchinson*, supra at 187 (1); *Kappers v. DeKalb County Bd. of Health*, 214 Ga. App. 117, 118 (446 SE2d 794) (1994).

On the other hand, in *R. W. Page Corp.*, supra at 578 (1), the Court did not separate the initial question of mootness from the "ca-

---

[4] On occasion the Georgia Supreme Court has looked beyond the named party to test mootness. See *Mulling*, supra (persons seeking review of issuance of peace bond); *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576, 578 (1) (292 SE2d 815) (1982) (news media desiring presence at criminal trials and pretrial hearings); *Poythress v. Moses*, 250 Ga. 452, 453 (1) (298 SE2d 480) (1983) (attack on election statute); *Multimedia WMAZ v. State*, 256 Ga. 698, 699 (1) (353 SE2d 173) (1987) (media desire to attend judicial hearings in criminal cases); *In re Jane Doe*, 262 Ga. 389, 390, fn. 2 (418 SE2d 3) (1992) (hospital desire to de-escalate medical treatment; patient had died); *In re L. H. R.*, 253 Ga. 439, 440 (321 SE2d 716) (1984) (same).

[5] Although a United States Supreme Court case is cited, it appears the court considered the issue moot but decided it anyway.

pable of repetition yet evades review" analysis.

Under the "exception" view, there is a problem with the transfer of this case by the Supreme Court to this Court in that if we decide the appellant's challenge is moot, then we must stand in the shoes of the Supreme Court and decide if it would take jurisdiction of the issue of the statute's constitutionality anyway as an exercise of discretion.

If this Court decides that the issue was not moot or warranted review because of its exceptional nature as otherwise being immune from review, then we would have to reverse the trial court order and remand the case for a decision on the constitutionality of the challenged statute. An appeal of that decision would lie in the Supreme Court of Georgia. If this Court decides the trial court was correct, then the Supreme Court could on certiorari disagree and still return the case to the trial court for an initial ruling on constitutionality.

If, on the other hand, we agree with the trial court and there either is no petition for certiorari or the Supreme Court declines review, that will be a final resolution of this case, and the question of constitutionality will remain unanswered. Even if we were to decide that the alleged error is capable of repetition and yet evades review, we could only bind the trial court by such a ruling; the Supreme Court could still decline to act if it is a discretionary matter. See *Atlanta Gas Light Co.*, supra, 206 Ga. App. at 317, citing *Chastain*, supra, 255 Ga. 432, and a Missouri opinion. The Georgia Supreme Court, in *Citizens for Ethical Govt.*, supra at 245 (1), pointed out that cases which are shown to fall within the narrow "exception" "may" be reviewed.

The purported discretionary nature of this exception-based jurisdiction is illustrated also in *Hutchinson*, supra; *In the Interest of J. B.*, supra; *American Cyanamid Co. v. Carter*, 164 Ga. App. 538, 540 (1) (298 SE2d 276) (1982); *Wood*, supra; *Caldwell*, supra; *United Food &c. Union*, supra; *Atlanta Gas Light Co.*, supra, 212 Ga. App. at 577 (1). *Hutchinson* held that the question did not meet the test because it was "not a situation in which issues, though moot, should be considered because they are capable of repetition, but may evade review," citing *Chastain*, 255 Ga. 432.

But it cannot be a discretionary judgment call because, at the least, OCGA § 5-6-48 (b) requires dismissal of moot cases. It is a matter of jurisdiction or not, as the United States Supreme Court repeatedly recognizes. The proper approach is to consider the term "moot" practically and realistically, given the nature of the challenge and the posture of the challenger. Georgia courts, like federal courts, are prohibited from rendering advisory opinions. Creating exceptions based on nothing more than judicial prerogative thus exceeds the judicial power and allows the courts to avoid the hard analysis of whether the

issue is moot. But that is the only question. If it is moot, it is not justiciable. It is not a matter of discretion.

Since we have been designated to review the question of justiciability, we proceed to that end, applying the same test to the trial court's jurisdiction as would govern on appeal.

Appellant argues that the question is not moot because there is a "reasonable expectation of recurrence" and thus meets the first prong of the test. That is, he expects that his name would again be placed on the Child Abuse Registry because of a report that he was physically disciplining his child. This presupposes that the son again allegedly altered a school report or failed to give reports to his father or misbehaved in some other way, that this led to spanking or some other form of discipline which left a mark on the child, that it was noticed by someone who reported it, and that the authorities determined there was credible evidence of alleged abuse such that registry of the father's name was required. OCGA §§ 49-5-183; 49-5-183.1.

All of this is speculative and does not rescue the constitutional issue from having become moot by expungement of the appellant's name from the registry, which relief he sought by petition. His own "live controversy" lost its steam when the trial court granted his petition. Even if the statute were ultimately held unconstitutional by the Supreme Court in his case, the ruling would have no effect on him because it would be abstract; expungement left no *existing* facts or rights at stake. See *Chastain*, supra, 255 Ga. at 433. Appellant does not represent, and has never represented, a class of persons whose petitions were denied. As to what appellant fears may arise at a future date, we have no authority to render an advisory opinion. See *Cheeks*, supra at 689; *Bd. of Commrs. of Walton County v. Dept. of Public Health*, 229 Ga. 173, 175-176 (2) (190 SE2d 39) (1972); *Froelich*, supra at 649.[6] Neither can the trial court merely advise I. B.'s father of the legal aspects of possible future consequences of possible future action on his part.

As to the second part of the test, the constitutionality of the statute does not inherently or eternally evade review, because anyone whose petition is denied can present it to the Supreme Court if it is properly raised and ruled on in the trial court. The Supreme Court concluded similarly in *Hutchinson*, supra. We did the same in *Froelich*, supra at 649, and in *Atlanta Gas Light Co.*, supra, 212 Ga. App. at 578 (1). Froelich's appeal was mandatorily dismissed as moot because the court found that although the alleged error was capable of repetition, it would not "eternally evade judicial review."

---

[6] Compare, as to this part of the test, *Atlanta Gas Light Co.*, supra, 212 Ga. App. at 577 (1).

Although the appellate courts in, e.g., *Hutchinson, Froelich*, and *Atlanta Gas Light Co.*, 212 Ga. App. 575, concluded that there was no justification for rendering an advisory opinion, we hold instead that the issue was not saved from mootness, even applying a broad view of nonmootness as does the United States Supreme Court.

Appellant's name has been expunged as he requested, and the question of the statute's constitutionality, although it may be raised repeatedly, does not evade review. The trial court had no discretion to rule on it, and so it did not err in declaring the constitutional challenge moot, as it was compelled to do.

*Judgment affirmed. Ruffin, J., concurs. Pope, P. J., concurs in the judgment only.*

DECIDED DECEMBER 1, 1995.

*Whiteman & Whiteman, Mary W. Whiteman*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Shalen A. Sgrosso, Assistant Attorneys General, Robert E. Hall, James W. Blount*, for appellee.

