## A96A2054. GRANTHAM v. GRANTHAM.
### (479 SE2d 370)

B<small>IRDSONG</small>, Presiding Judge.

We granted this appeal of the trial court's grant of permanent custody of Joyce Grantham's child to the child's grandmother. The grandmother filed a "Complaint for Temporary and Permanent Custody" alleging that the child has lived with her since birth and that the mother has certain bad habits and problems and is incapable of caring for and supporting the child. At the hearing in Coffee County Superior Court, the mother appeared pro se, and the grandmother was represented by counsel Keith Solomon. The hearing is reported herewith in its entirety:

"REPORTER'S NOTE: On Monday, March 11, 1996, at approximately 10:30 a.m., the within case is called for hearing and the following transpires: THE COURT: Graham versus Graham. [SOLOMON]: Is that Grantham, Judge? [COURT]: Yes, excuse me, it is Grantham. [SOLOMON]: Ms. Grantham. (Parties approach the bench.) [SOLOMON]: Judge, this is a complaint for temporary and permanent custody. The defendant is Joyce Grantham; that is the plaintiff's daughter. She is here today. She is unrepresented. I spoke to her before court to ask if she was going to contest the custody being changed to her mother and she said that she was. This is the plaintiff, Mrs. Margaret Grantham. She is the maternal grandmother of an approximately four year old child who has been in her custody since [her] birth. Joyce Grantham is the mother. [COURT]: Is that what this is, a temporary custody? [SOLOMON]: This is tempo-

rary and permanent custody, is what we had asked for in this matter. This is the grandmother who has had the baby since [her] birth. This is the mother who is contesting the custody. [COURT]: All right. Ma'am, do you want to say something? [MOTHER]: I've been there with the baby up [until] the last seven months. The baby's been with me living in her house. [SOLOMON]: She has since the child's birth, Judge, been in and out of Mrs. Grantham's house. She's been using —. [COURT]: All right, Mrs. Grantham, let me hear from you. [SOLOMON]: I'm sorry. [GRANDMOTHER]: Me? [COURT]: Yes, come on up closer, all of you. [GRANDMOTHER]: I've taken —. She's always been one, she was in and out with this man, that man. She'd bring men in my home. She's never worked. I bought her a car to go to work and she —. [COURT]: Okay. Well, what about the child though? [GRANDMOTHER]: The child, she didn't take care of the child. She'd lay in the sun, shut this baby up in a trailer. She'd lay out. And I didn't know all this till I was operated on last June and I found all this out, and —. [COURT]: How old is the child? [GRANDMOTHER]: She's three and a half right now. [COURT]: Where is she now? [GRANDMOTHER]: She's with the babysitter. [COURT]: Well, I mean, is she in your custody? [GRANDMOTHER]: She's in my custody. [COURT]: How long has she been in your custody now? [GRANDMOTHER]: Well, she's been in —. [COURT]: How long has the mother been gone? [GRANDMOTHER]: The mother left in July. [MOTHER]: August. [COURT]: Where did she go? [GRANDMOTHER]: She went to live with another man. She was —. [COURT]: Where? [GRANDMOTHER]: At West Green. [COURT]: Has she been back to see the child? [GRANDMOTHER]: No. She's not called and asked for —. [COURT]: For seven months? [GRANDMOTHER]: Yeah. She's not called and asked about the child. [COURT]: Are you telling the truth? [GRANDMOTHER]: Yes, sir, Your Honor —. [MOTHER]: Can I —? [COURT]: Is she telling the truth? [MOTHER]: I swear on the Bible, I've been over there. She would not let me see the child. [COURT]: Have you come up here lying to me? [GRANDMOTHER]: No ma'am — No, sir, I've not lied to you. [COURT]: Well, that's what your daughter said; said you were lying. [MOTHER]: And I've never been under investigation from the welfare or anything. [GRANDMOTHER]: The only reason she's never been investigated by the welfare —. [COURT]: I'm not asking that. You said she hadn't visited the child. [GRANDMOTHER]: She's not visited the child. [MOTHER]: I have —. [GRANDMOTHER]: She has not —. [COURT]: Has she tried to? [GRANDMOTHER]: No. [MOTHER]: Yes, sir. [GRANDMOTHER]: I have carried —. The only time that she has spent any time with the child, I carried her to the lady's house right back there, and she was sick and I carried her up there and she visited with the child. I carried her a cake and some

saltine crackers because she was sick. [COURT]: Is that the one time? [GRANDMOTHER]: One time. That's the onliest time she's spent any time with the child. [COURT]: Okay. What are you asking? [SOLOMON]: I'm asking for temporary and permanent custody to be changed to the grandmother. [COURT]: Okay. [SOLOMON]: This is the babysitter, Judge, that has kept the child some, if you want to hear from her. [COURT]: No. Do you want to add something else to it? [MOTHER]: Yes, I've been to the sheriff's department several times, you know, trying to see how I go back to get my child, and I've talked to Loretta Parker way back in August and she told me I'd have to have her locked up, and I didn't want to have my mama locked up (witness becomes emotional). [COURT]: To get custody of the child —. [GRANDMOTHER]: Why, your honor, she took —. [COURT]: I don't —. All right. That's all I need to hear. All right, we'll grant you permanent custody. [SOLOMON]: Thank you, Judge. I have the Order. [COURT]: Give her some visitation now. Reasonable-type visitation rights. [SOLOMON]: All right, let me have the Order back then and I'll put in some reasonable visitation. Judge, I can add some visitation to that. I don't think I had put any in there. [COURT]: Yes, I want her to be able to have visitation. [SOLOMON]: Thank you. PROCEEDINGS CONCLUDED."

The order presented by Solomon for the trial court to execute specified that the mother committed the certain unsavory acts and possessed the problems alleged by the grandmother's petition, and the proposed order provided no visitation for the mother. Not to prove evidence but to show the dearth of evidence, we note that appellant in her brief contends that in concluding she had not tried to see her child, the trial judge evidently forgot that he himself had restrained her from seeing her child four months before the hearing, and that she tried numerous times to see her child but was refused by the grandmother. Appellant also asserts she herself lived with her child at her mother's house from the time of the child's birth until her mother threw her out.

Appellant's arguments do not precisely follow her enumerations of error; we shall not address those enumerations in detail. *Held*:

1. Appellant contends the legislature's new law (OCGA § 19-7-1 (b.1)) is unconstitutional where it purports to allow a parent to lose custody of a child to a third party by a showing of the best interests of the child. However, the Court of Appeals is not authorized to declare a statute unconstitutional. *Commr. of Ins. v. Stryker*, 218 Ga. App. 716, 719 (6) (463 SE2d 163). As we have quoted the transcript of the hearing below in its entirety, it is clear that no issue of constitutionality of this statute was raised in the trial court. See *In the Interest of I. B.*, 219 Ga. App. 268, 276 (464 SE2d 865); *Morton v. State*, 206 Ga. App. 413, 414 (425 SE2d 336).

Prior to enactment of OCGA § 19-7-1 (b.1), in a case involving a custody dispute between a parent and a third party, the trial court was required to first determine whether the parent has lost his or her parental rights pursuant to OCGA § 19-7-4, or is unfit pursuant to Georgia law. *Villenueve v. Richbourg*, 217 Ga. App. 354 (1) (457 SE2d 821), quoting *Martini v. Jefferson*, 213 Ga. App. 666 (445 SE2d 814) and citing *Carvalho v. Lewis*, 247 Ga. 94 (274 SE2d 471). We and the Supreme Court have repeatedly held that a court cannot terminate parental rights simply because it finds the child may have better financial, educational, or even moral advantages elsewhere. *Carvalho*, supra.

There was no evidence in this hearing either of the mother's unfitness *or* the best interests of the child. Whether the case is adjudged under the "clear and convincing evidence of unfitness" standard which has been the law in cases involving a custody challenge by a third party (see *In the Interest of A. D.*, 208 Ga. App. 438 (430 SE2d 809); *In re M. M. A.*, 166 Ga. App. 620 (305 SE2d 139)) or under the new law creating a "best interests of the child" standard for third-party challengers to custody, there is no evidence warranting the actions of the trial court awarding custody of this child to the grandmother under any principle of law.

2. There was no *sworn* testimony of any kind. Whatever is the standard of law in these cases today, there is no evidence authorizing a finding of any kind. The sanction of an oath is essential to the reception of any oral evidence. OCGA § 24-9-60. "In this State an oath or affirmation is required of all witnesses, and unsworn statements are not treated as amounting to any evidence, except 'in specified cases from necessity.' [Cits.]" *Huiet v. Schwob Mfg. Co.*, 196 Ga. 855, 859 (27 SE2d 743). No valid judgment could have been rendered on the unsworn statements made in this hearing.

*Judgment vacated and case remanded for proper proceedings. Beasley, C. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 7, 1996 —
RECONSIDERATION DENIED DECEMBER 11, 1996.

*William R. Lawrence, Vicky O. Kimbrell, Phyllis J. Holmen, Lisa J. Krisher*, for appellant.
*Keith H. Solomon*, for appellee.