A04A1215. BOARD OF TAX ASSESSORS OF WARE COUNTY
et al. v. BAPTIST VILLAGE, INC.
(605 SE2d 436)

MILLER, Judge.

This case involves a property tax dispute between the Board of Tax Assessors of Ware County and the Ware County Board of Equalization (which we refer to collectively as "the Board") and Baptist Village, Inc., a nonprofit charitable institution that operates a home for the aged in Waycross. In 2002, the Board attempted to collect property taxes on the Waycross property's new independent-living units. Baptist Village challenged this attempt at tax collection in Ware County Superior Court. Following a bench trial, the court held that Baptist Village's independent-living units enjoyed the same longstanding charitable exemption as the assisted-living and nursing-care parts of that property. On appeal, the Board reasserts arguments made below that the new independent-living units are substantially unrelated to Baptist Village's charitable purpose of providing care to the aged. We disagree, and therefore we affirm.

Considered in the light most favorable to the trial court's judgment, the evidence shows that Baptist Village operates homes for the elderly in Waycross, Macon, and Lake Park. According to the language of its original charter, Baptist Village is a "charitable institution" whose purpose is "the reception, care, and maintenance of persons of advanced age." Baptist Village neither issues capital stock nor pays any of its net earnings to any trustee or officer. Its bylaws describe Baptist Village as an "integrated auxiliary" of the Georgia Baptist Convention, to which its president and chief executive officer must make an annual report.

In 1961, Baptist Village received a tax determination letter from the United States Treasury Department granting it tax exempt status under Section 501 (c) (3) of the Internal Revenue Code due to Baptist Village's "religious and charitable" purposes. At trial, Baptist Village's current president testified that the Internal Revenue Service has never questioned this determination of the Village's tax-exempt status. In 1997, the Georgia Department of Revenue issued its own determination that Baptist Village was exempt from Georgia income tax under OCGA § 48-7-25. Baptist Village does pay ad valorem taxes on properties in Ware and Jefferson Counties, neither of which is used in furtherance of its activities.

This case concerns Baptist Village's Waycross, Ware County facility. The original 1957 architect's plan portrayed independent-living units along the periphery of the property like those constructed decades later. The first buildings to rise on the Waycross campus were known as "the Apartments," and were occupied by independent-living retirees. Over time, and as its original residents came to need a higher level of care, both an assisted-living facility and a nursing-care facility were added. In the 1990s, Baptist Village formulated a development plan that included the construction of the new independent-living units now known as "the Villas." The first Villas units were occupied by the end of 1997. Forty-five single-family and duplex units were eventually built, covering approximately 26 acres of the 172-acre Waycross campus.

In order to move into the Villas, a person (or at least one member of a couple) must be at least 65 years old. The new resident must sign a Residency Agreement and pay a so-called "development fee" (currently $89,000 for half a duplex and $99,000 for a single-family unit) as well as a monthly maintenance fee and other charges. Residents of the Villas use many of the services offered elsewhere on the Waycross campus, including the clinic, computer club, cafeteria, and beauty shop, paying the same rates as assisted-living and nursing-care residents.

The Residency Agreement disclaims responsibility for the "lifetime" or "continuing" care of Villas residents and reserves the right to terminate those whose deteriorating health makes it impossible for them to continue living there. However, Baptist Village has always allowed Villas residents to move into either assisted living or nursing care regardless of their ability to pay as long as space was available at the higher level of care. To date, in fact, Baptist Village has "never asked [any Villas resident] to leave for any reason."

Whether as a result of these policies or not, the Villas have always operated at a loss, as in the 11-month period just before trial, when this part of the Waycross property posted a net operating loss of over $234,000. When amortized income from development fees is

included, revenues in the same period amounted to just under $28,000. There was testimony at trial suggesting that the Villas' average annual percentage return on investment was 1.8 percent — a figure far below the ten percent or more a for-profit investor would reasonably expect, and one not likely to rise substantially in the foreseeable future.

Though it had never disputed the tax-exempt status of any part of the Waycross campus before, the Board convinced the Ware County Board of Equalization in May 2002 that the Villas property should be excluded from the Waycross campus's longstanding exemption for the tax years beginning and after 1998. Baptist Village appealed to the superior court, which denied its motion for summary judgment. At the end of a bench trial, the court asked both parties to prepare drafts of findings of fact and conclusions of law in accordance with OCGA § 9-11-52 (a). The court then issued a judgment order with findings of fact and conclusions of law, holding that "Baptist Village is using the Villas as part of its religious and charitable operation, consistent with its federal tax exemption," and that the Board therefore could not collect property tax on the Villas portion of Baptist Village's Waycross campus.

The Board appeals the judgment of the trial court on four grounds: (1) that Baptist Village is not entitled to a property tax exemption on the Villas section of its property because that section is not a "home for the aged" under OCGA § 48-5-41 (a) (12); (2) that the Villas are not an "integrated auxiliary of a church" under OCGA § 48-5-41 (a) (2.1) (B); (3) that the court erred in granting tax-exempt status to all future Villas units; and (4) that because Baptist Village presented its case first despite the court's finding after trial that the Board had the burden of proof throughout, the entire trial was procedurally defective.

1. On appeal, we are bound to defer to the trial court's findings of fact, which "shall not be set aside unless clearly erroneous, [with] due regard . . . given to the opportunity of the trial court to judge the credibility of the witnesses." OCGA § 9-11-52 (a); *Bell v. Cronic*, 248 Ga. 457, 459 (2) (283 SE2d 476) (1981). "If there is any evidence to support the findings of fact by a trial court sitting without a jury, then the appellate court affirms without interference with or disturbing such factfindings." *Claxton Enterprise v. Evans County Bd. of Commrs.*, 249 Ga. App. 870 (549 SE2d 830) (2001).

The section of the Georgia tax-exemption statute at the center of this case dates from 1977. It reads:

(a) The following property shall be exempt from all ad valorem property taxes in this state: . . .

(12) (A) Property of a nonprofit home for the aged used in connection with its operation when the home for the aged has no stockholders and no income or profit which is distributed to or for the benefit of any private person and when the home is qualified as an exempt organization under the United States Internal Revenue Code, Section 501 (c) (3), as amended, and Code Section 48-7-25, and is subject to the laws of this state regulating nonprofit and charitable corporations;

(B) Property exempted by this paragraph shall not include property of a home for the aged held primarily for investment purposes or used for purposes unrelated to the providing of residential or health care for the aged.

OCGA § 48-5-41 (a) (12) (A), (a) (12) (B); Ga. L. 1977, p. 1152, §§ 1, 2.

(a) Before the passage of OCGA § 48-5-41 (a) (12), an organization like Baptist Village could have been termed an institution of "purely public charity," a term dating from the oldest versions of this statute, now encoded at OCGA § 48-5-41 (a) (4). See *York Rite Bodies of Freemasonry &c. v. Bd. of Equalization &c.*, 261 Ga. 558 (1), n. 2 (408 SE2d 699) (1991). When it passed the 1977 portion of the statute, the General Assembly headed the new law with a caption providing that "the exemption herein granted is cumulative and not in derogation of relief granted by other laws." Ga. L. 1977, p. 1152. As this Court has recently held, this language indicates the General Assembly's understanding that a nonprofit tax-exempt corporation could be exempt under more than one provision of the Code, and that the new home-for-the-aged exemption was an expansion, not a limitation, of the category of charitable institutions entitled to an exemption under OCGA § 48-5-41. *Annandale at Suwanee v. Gwinnett County Bd. of Tax Assessors*, 242 Ga. 241, 242 (248 SE2d 640) (1978); *Lamad Ministries v. Dougherty County Bd. of Tax Assessors*, 268 Ga. App. 798 (602 SE2d 845) (2004). When it extracted "homes for the aged" from the older and more general category of institutions of "purely public charity," then, the General Assembly was both encouraging the construction and operation of new nonprofit homes for the aged and ensuring that the creation of the homes-for-the-aged exemption would not undermine any pre-existing exemptions claimed by homes for the aged in the past. *Lamad Ministries*, supra, 268 Ga. App. at 802 (noting statutory policy of encouraging nonprofit elder care).

As the trial court noted, most of the requirements set out in subsection (a) (12) (A) are matters of undisputed fact in this case. Baptist Village is clearly a nonprofit "home for the aged," defined in the adjacent Code section as "a facility which provides residential services, health care services, or both residential services and health

care services to the aged." OCGA § 48-5-40 (2). The Villas property is owned by Baptist Village, which has neither stockholders nor distributions of income to private persons, is subject to Georgia laws regulating nonprofit and charitable corporations, and has been determined to be a tax-exempt organization under both Federal and Georgia law. Thus the only conceivable question remaining to the trial court was whether the Villas are indeed "used in connection with" Baptist Village's Waycross operations, or whether the Villas property is instead sufficiently detached from or independent of those operations that it must be treated separately for purposes of OCGA § 48-5-41 (a) (12) (A).

The Board strains to distinguish the Villas from the rest of the Waycross campus, asking us to imagine that under the trial court's holding, the Villas would still qualify as a tax-exempt home for the aged even if they dramatically raised fees charged to new tenants. This fantasy scenario cannot obscure the evidence introduced at trial that the Villas have always operated at a loss and are likely to do so for the foreseeable future. Though Baptist Village admits that it is not in a position to guarantee care at any and all levels to all present or prospective residents, it has a policy of allowing Villas residents to move to higher levels of care regardless of their ability to pay and has never asked any Villas resident to leave for any reason, including nonpayment of fees or charges. In other words, the fact that Baptist Village cannot be "all things to all people," as its president admitted at trial, does not mean that the Village, including the Villas, is somehow not "charitable enough" to maintain its tax-exempt status.

Indeed, nothing in OCGA § 48-5-41 supports a limitation of tax-exempt status based on either the level of care provided (as long as that care is either residential or health-related) or the apparent profitability of a part of a home's operation. Whether this portion of Baptist Village earns a profit or not, and whether the Villas provide residential or health care, their charitable nature is essentially similar to that of the other operations on the Waycross campus, all of which are devoted to the Baptist Village mission of dispensing care to the elderly. *Peachtree on Peachtree Inn v. Camp*, 120 Ga. App. 403, 411 (170 SE2d 709) (1969) (charging rent to residents does not destroy charitable nature of inn for elderly); see also *Fulton County Bd. of Tax Assessors v. Visiting Nurse Health System &c.*, 256 Ga. App. 475, 477 (568 SE2d 798) (2002) (occasional excess revenue not sufficient to overturn nurse association's tax exemption as "purely public charity"). As this Court wrote in *Peachtree*:

> The concept of charity is not confined to the relief of the needy and destitute, for aged people require care and attention apart from financial assistance, and the supply of this

care and attention is as much a charitable and benevolent purpose as the relief of their financial wants.

(Citations and punctuation omitted.) *Peachtree on Peachtree Inn*, supra, 120 Ga. App. at 411. As an integral part of Baptist Village's charitable operations, then, the Villas are entitled to share Baptist Village's longstanding tax exemption as a "home for the aged" as defined in OCGA § 48-5-41 (a) (12) (A). See *Lamad Ministries*, supra, 268 Ga. App. 798 (upholding tax exemption for home for the aged claimed by ministry also operating church, radio ministry, and counseling center).

(b) The Board argues in passing that the Villas portion of the Waycross property is not entitled to a tax exemption because it is "held primarily for investment purposes" under OCGA § 48-5-41 (a) (12) (B). For example, the Board argues that the Villas' balance sheets could be construed as showing some excess revenue from 1997, when the first units were occupied, through May 2003, with an average annual return during that period of 4.7 percent. As the Board concedes, however, there was substantial testimony against this and other parts of its interpretation of the Villas' economic condition. The Board also claims that the testimony of one of its own experts "[goes] directly to the issue" of the Villas' status as investment property under subsection (a) (12) (B), but fails to make any specific reference to the record supporting its reliance on this testimony.

The trial court concluded that the same set of facts dictating its holding under subsection (a) (12) (A) also proved that the Villas "are not held by Baptist Village primarily for investment purposes" under subsection (a) (12) (B). As we have already emphasized, if there is *any* evidence to support findings of fact made at a bench trial, this Court will affirm. *Claxton Enterprise*, supra, 249 Ga. App. at 870. For the same reasons and on the same facts just discussed, therefore, we hold that the trial court had substantial evidence to support its finding that Baptist Village does not hold the Villas for investment or other purposes under subsection (a) (12) (B) such that it would lose its "homes for the aged" exemption under subsection (a) (12) (A).

2. The Board next argues that the trial court erred in finding the Villas to be an "integrated auxiliary of a church" under OCGA § 48-5-41 (a) (2.1) (B). Since we held in Division 1 that the Villas and Baptist Village are entitled to tax-exempt status under OCGA § 48-5-41 (a) (12), we find it unnecessary to reach the issue whether they are entitled to another exemption under a different subsection of the same statute. See *Lamad Ministries*, supra, 268 Ga. App. 798 (declining to rule on home for the aged as "place of religious worship" under OCGA § 48-5-41 (a) (2.1) on ground that home is already tax-exempt under OCGA § 48-5-41 (a) (12)).

3. The Board also objects to the trial court's order that "any future expansion of the Villas (whether by that name or a separate name) shall be treated as tax-exempt by the County Board of Tax Assessors" on grounds of overbreadth. As Baptist Village notes, however, the 1961 IRS determination letter imposed a responsibility to report any changes in its "character, purposes or method of operation" to the Internal Revenue Service "immediately." We have no way of knowing whether Baptist Village will change its operations at some point in the future so as to destroy its charitable character, or whether it would fail to comply with the IRS's command to report such changes if they did occur. Georgia courts "do not concern themselves with the solution of academic problems" such as this. *In the Interest of I. B.*, 219 Ga. App. 268, 270 (464 SE2d 865) (1995); *Bankers Life &c. Co. v. Cravey*, 90 Ga. App. 113, 119 (82 SE2d 150) (1954). Thus we conclude that while Baptist Village is entitled to an exemption on present and future Villas construction, the issue of the tax-exempt status of future construction on the Waycross property substantially different from that already undertaken is one not yet ripe for adjudication.

4. Finally, the Board argues that because Baptist Village presented its case first even though the Board was found to have had the burden of proof, and because counsel "might well have structured the presentation of his case entirely differently" had he known that the Board carried this burden, the entire trial was procedurally defective.

It has long been clear that anyone seeking an exemption under OCGA § 48-5-41 has the burden of showing their entitlement to that exemption. *York Rite*, supra, 261 Ga. at 559; *Lamad Ministries*, supra, 268 Ga. App. at 801 (1). However, a 1999 amendment to the tax equalization board statute assigned the burden of proof in appeals to the superior court to boards of equalization. In a section entitled "Appeals to the superior court," the statute reads:

> The appeal shall constitute a de novo action. The board of tax assessors shall have the burden of proving their opinions of value and the validity of their proposed assessment by a preponderance of evidence.

OCGA § 48-5-311 (g) (3); Ga. L. 1999, p. 1043, § 3.

This case is unusual in that the Board is contesting a charitable exemption not in the first instance, as the county authorities were in *York Rite* and *Lamad Ministries*, but on the ground that construction and operation of the Villas has somehow destroyed the *pre-existing* charitable nature of that portion of the Waycross property. Baptist Village carried its burden of proving entitlement to an exemption as to this portion of the property more than 40 years ago, and the charitable exemption it received has never been challenged by either

the federal or the state taxing authority. If we were to rule in the Board's favor on this issue, improvements undertaken by a charitable home for the aged might not only attract the attention of its local tax board, but also require the charitable home to carry the burden of proof all over again in a superior court action resulting from that board's interest.

Most important, and regardless of who should have borne the burden of proof in the superior court, the Board has not shown that it was disadvantaged as a result of its position as respondent at trial. Even assuming that the judge should have allowed the Board to proceed first, this was harmless error when, as here, both parties had ample opportunity to present evidence, and where some of that evidence supports the factfinder's conclusion. *Dan Vaden Chevrolet v. Mann*, 234 Ga. App. 500, 501-502 (1) (506 SE2d 653) (1998).

For all of the preceding reasons, we affirm the judgment of the trial court that Baptist Village is entitled to the same tax exemption under OCGA § 48-5-41 (a) on the Villas portion of its Waycross campus as on the rest of that property.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 4, 2004.

*Huey W. Spearman*, for appellants.

*James, Bates, Pope & Spivey, Thomas C. James III, Stephen L. Dillard, Long & Denton, Vann K. Parrott*, for appellee.