A11A1462. PARTNERSHIP HOUSING AFFORDABLE TO SOCIETY EVERYWHERE, INC. v. DECATUR COUNTY BOARD OF TAX ASSESSORS.

(719 SE2d 556)

SMITH, Presiding Judge.

Following a bench trial, the Partnership Housing Affordable to Society Everywhere, Inc. ("PHASE") appeals from the superior court's decision to uphold the denial of an ad valorem tax exemption to PHASE. PHASE contends the trial court erred by concluding that it does not qualify for a tax exemption under OCGA § 48-5-41 (a) (4). For the reasons set forth below, we affirm.

OCGA § 48-5-41 (a) (4) provides that "[a]ll institutions of purely public charity" shall be exempt from all ad valorem property taxes. In order to qualify as an institution of "purely public charity" under this Code section, *"First, the owner must be an institution devoted entirely to charitable pursuits*; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits." (Emphasis supplied.) *York Rite Bodies &c. v. Bd. of Equalization &c.*, 261 Ga. 558 (2) (408 SE2d 699) (1991). In a four-page order detailing its findings of fact and conclusions of law, the trial court determined that PHASE was not entitled to an exemption under OCGA § 48-5-41 (a) (4) because it was "not devoted entirely to charitable pursuits."

On appeal, we are bound to defer to the trial court's findings of fact, which shall not be set aside unless clearly erroneous, with due regard given to the opportunity of the trial court to judge the credibility of the witnesses. If there is any evidence to support the findings of fact by a trial court sitting without a jury, then the appellate court affirms without interference with or disturbing such factfindings.

(Citations and punctuation omitted.) *Bd. of Tax Assessors &c. v. Baptist Village*, 269 Ga. App. 848, 850 (1) (605 SE2d 436) (2004) (affirming trial court's factual finding that 501 (c) (3) nonprofit did not hold "homes for the aged" for investment purposes and therefore did not lose its property tax exemption under OCGA § 48-5-41 (a) (12) (B)). See also *Fulton County Bd. of Tax Assessors v. Visiting Nurse Health System &c.*, 256 Ga. App. 475, 477 (2) (b) (568 SE2d 798) (2002) (issue on appeal whether "any evidence" supports factfinder's conclusion that appellee was "institution of purely public charity").

The evidence presented to the trial court shows that PHASE is a nonprofit corporation exempt from federal taxation under Section 501 (c) (3) of the Internal Revenue Code. PHASE's articles of incorporation describe its purpose as follows: "To receive and administer funds exclusively for educational and charitable purposes without pecuniary gain or profit, incidental or otherwise, to any individual, with particular emphasis on providing affordable housing to low-income persons, including farmworkers and the elderly." Joyce M. Barr incorporated PHASE in 1996 and serves as its chief executive officer, president, and sole employee.

Barr testified that in 1998, PHASE applied for and obtained grants and loans to build Harvest Home Apartments for low-income farm workers. The apartments were completed in 2003. After experiencing low occupancy rates, in part, because the farm workers preferred living on the property where they worked, PHASE began renting the apartments to other people with "low and very low income." Around the same time, PHASE took over management of the apartments and received management fees to cover its administrative overhead.

Harvest Home Apartments was built on three acres of a thirteen-acre tract purchased by PHASE. In 2004, PHASE sold 5.761 acres to Courtes de Emerald, LP ("Courtes I") for $75,000. PHASE subsequently sold additional land to Courtes de Emerald II, LP ("Courtes II"), in 2008 for $67,500. Both of these limited partnerships built mixed-income apartments on the land purchased from PHASE. Some of the units were rented at market rate, "but 75 to 80 percent of the units are low-income, qualified units." Rents in the low-income units were two or three hundred dollars less than the market rate for the same amenities.

According to Barr, she was paid only by PHASE for her role as "the main principal" developing the properties for the private limited partnerships. She received six-figure compensation from PHASE in 2007-2009, including bonuses in the $50,000 to $75,000 range.

An entity controlled by PHASE owned a nominal .01 percent

interest in both limited partnerships. The remaining 99.99 percent interest in the limited partnerships was owned by investors who provided cash in exchange for offsets against their income from other sources via losses and depreciation from the limited partnerships. Neither of the limited partnerships was a nonprofit organization. Barr explained that "every time P[HASE] develops a property, we have to organize an ownership entity, and that's why we have [four different entities]. Each one of those entities refers directly to the property that was developed. Aside from that, we serve as the . . . manager of the general partner." PHASE paid the attorney fees to set up the limited partnerships with funds received from a government grant.

Barr testified that the limited partnerships and resultant tax credits furthered the mission of PHASE because it was "another excellent program that we can utilize to bring affordable housing to rural areas because otherwise these projects could not be built." She further explained that PHASE receives a "developer fee as our income for developing the properties. And that's PHASE's main and only source of income is through developing properties." Barr testified that "P[HASE]'s main overhead is my compensation." She explained, "I have been a one person shop. . . . I mean as a nonprofit, it's just been me."

It is undisputed that PHASE never made distributions to its board members or owners. The record also shows, however, that PHASE lent $229,950 to one of the limited partnerships, the same amount as a government grant received by PHASE. Barr testified that PHASE did not expect the loan to be repaid and that PHASE has not in fact been repaid. Barr explained that PHASE "had to . . . sort of loan the money to the partnership because that was the tax benefit that the investment partner wanted to see." The money from this loan went into construction and was never paid back. Additionally, according to a deed to secure debt in the record, PHASE lent $67,500 to one of the limited partnerships on April 22, 2008, the same amount as the purchase price for one of the parcels of land sold on the same day. When shown the loan and the deed during cross-examination, Barr denied the existence of a loan and insisted that the sale "was a cash purchase."

Based upon the "any evidence" standard of review, we affirm the trial court's conclusion that PHASE was "not devoted entirely to charitable pursuits." See *Institute of Nuclear Power Operations v. Cobb County Bd. of Tax Assessors*, 236 Ga. App. 48, 51 (1) (510 SE2d 844) (1999); *Board of Equalization v. York Rite Bodies &c.*, 209 Ga. App. 359, 360 (433 SE2d 299) (1993). PHASE's conduct in giving $229,950 to the limited partnership in the form of a loan that was not expected to be repaid served the noncharitable purpose of increasing

the limited partners' tax credits. This unearned increase in the tax credits provided pecuniary gain to the investors in violation of PHASE's articles of incorporation, which provided that PHASE would "receive and administer funds *exclusively* for . . . charitable purposes *without pecuniary gain* or profit, *incidental or otherwise*, to any individual. . . ." (Emphasis supplied.)

The Georgia Supreme Court's recent opinion in *Nuci Phillips Mem. Foundation v. Athens-Clarke County Board of Tax Assessors*, 288 Ga. 380, 385 (2) (703 SE2d 648) (2010) (plurality opinion), does not alter this result. In *Nuci Phillips*, the Supreme Court addressed the impact of a 2007 amendment to OCGA § 48-5-41 (d) (2), which is not applicable here. The issue before the court was not whether an institution fulfilled the first prong of the *York Rite* test requiring that "the owner must be an institution devoted entirely to charitable pursuits." Rather, the Supreme Court looked to the third prong of the *York Rite* test to decide whether the renting of space for private birthday parties and wedding receptions was a use of the property inconsistent with the requirement that it be used "exclusively" for the charitable purpose. Id. at 384-385 (1). There was no question in *Nuci Phillips* as to whether the charity was "devoted entirely to charitable pursuits."

*Judgment affirmed. Mikell, C. J., and Dillard, J., concur.*

DECIDED NOVEMBER 16, 2011 — 

*Sutherland, Joshua A. Mayes*, for appellant.
*Hall, Booth, Smith & Slover, J. Brown Moseley*, for appellee.