**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 25, 2016**

# In the Court of Appeals of Georgia

A15A1987. NILOY & ROHAN, LLC v. SECHLER.                    DO-096

DOYLE, Chief Judge.

Niloy & Rohan, LLC ("N&R") and Chuck Sechler were equal members of a limited liability company that purchased land and built and sold condominium units. After a dispute arose as to the distribution of revenue, N&R sued Sechler, and following a bench trial, the trial court held that Sechler had breached both his contract with and fiduciary duty to N&R by improperly and prematurely distributing company funds to himself and his brokerage firm without first paying the company's creditors. The trial court nonetheless held that N&R was not entitled to recover monetary damages because N&R failed to prove that it, as opposed to other creditors not party to the lawsuit, actually suffered damages from Sechler's contractual and fiduciary breaches and, alternatively, that any damage recovery was barred by the parties'

modification through conduct of the contractual terms under which they operated.

N&R appeals, arguing that the trial court erred by holding that it did not prove that

it suffered actual damages and by holding that a mutual departure from the contract

precluded its damage recovery. For the reasons that follow, we affirm in part and

reverse in part the trial court's judgment and remand the case to the trial court for

proceedings consistent with this opinion.

> In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. The standard by which findings of fact are reviewed is the "any evidence" rule, under which a finding by the trial court supported by any evidence must be upheld. However, we apply a de novo standard of review to any questions of law decided by the trial court.[1]

So viewed, the record shows that N&R is a family-owned LLC managed by

Chuck Thakkar, and Sechler is a real estate broker with his own separate real estate

brokerage firm known as New South Properties, LLC ("New South"). In 2004, N&R

and Sechler formed Steve Reynolds Partnership, LLC ("SRP"). The purpose of SRP

---

[1] (Citation and punctuation omitted.) *Schick v. Bd. of Regents of the Univ. System of Ga.*, 334 Ga. App. 425, 425-426 (779 SE2d 452) (2015).

2

was to purchase raw land, develop the property, build office condominiums, and sell the office condominiums (the "Project"). N&R advanced funding for the Project, and Sechler was responsible for managing the company's operations, including marketing and selling the condominium units through New South as they were built.

In conjunction with this business venture, N&R and Sechler executed a contract pursuant to which N&R agreed to loan SRP up to $2,000,000 for the construction and development of the Project (the "Operating Agreement"). The Operating Agreement provided that the loan was to be evidenced by a note and conditioned on N&R and Sechler each executing a personal guaranty for 50 percent of the loan amount; however, it is undisputed that no such documents actually were prepared or executed.

As the Project continued, Thakkar provided additional funding well beyond the initial $2,000,000 loan. Thakkar used not only N&R for the Project funding, but also provided funds from several of his other business entities. Indeed, from August 2003 through October 2012, Thakkar's various companies paid $8,515,495.97 toward the Project, only $1,387,289.79 of which was paid by N&R.

Sechler administered the marketing and sale of each condominium unit as it was completed. As SRP's manager and the real estate broker on the transactions,

Sechler controlled all funds received from closings. Pursuant to the terms of the Operating Agreement, Sechler was responsible on behalf of SRP for preparing a budget, keeping accurate books, convening quarterly meetings, preparing quarterly profit and loss statements, issuing yearly balance sheet reports, and providing N&R access to all financial information. He failed to perform any of these obligations, and, prior to the events leading to this lawsuit, there was no evidence that N&R ever demanded that he do so.

The Operating Agreement further required that all proceeds from the closings of the properties were to go first toward payment of SRP's expenses, then toward payment of SRP's outstanding debts and liabilities, and only then were the remaining proceeds to be divided equally between the parties. Under this structure, Thakkar's various funding entities, including N&R, would be considered SRP creditors and would be repaid before any funds were distributed to the parties.

According to Sechler, in 2006, he and Thakkar agreed that, contrary to the terms of the Operating Agreement, they would apply 65 percent of each condominium's net sale proceeds to the expenses and outstanding debt and would split the remaining 35 percent equally. There was evidence presented at trial that each party received $778,504.73 pursuant to this formula. Although Sechler characterized

4

these payments to himself as "profit," he maintained that the payments to N&R were intended as loan repayments.

Beginning in 2008, condominium sales slowed and ultimately ceased. Sometime thereafter, N&R requested an accounting, and Thakkar, realizing that the Project faced a significant shortfall in revenue, consulted with Sechler in an attempt to resolve SRP's outstanding debt. Sechler initially denied any shortfall, then acknowledged the outstanding balance owed but challenged N&R's accounting. Ultimately, however, he failed to produce any evidence to contradict N&R's accounting and stipulated to its accuracy.

When the parties failed to reach a resolution as to the treatment of the outstanding debt, N&R filed the instant lawsuit against Sechler, alleging breach of contract and breach of fiduciary duty based upon Sechler's treatment and distribution of proceeds from the condominium sales. N&R sought to recover one-half of all investments made to the Project from Thakkar's various entities.

During the ensuing bench trial, the stipulated accounting showed that SRP had an outstanding principal debt somewhere between $1.8 million and $2.6 million that

was owed to Thakkar's various entities.[2] Despite that outstanding debt, Sechler had paid himself $899,465.85[3] in sale proceeds and paid New South an additional $384,264.07 in improper commissions and fees. Noting that Sechler continued to classify payments to himself as "profit" distributions, but payments to N&R and Thakkar and/or his other entities as loan repayments, the trial court held that Sechler's distribution of the sale proceeds both violated the terms of the Operating Agreement and constituted a breach of his fiduciary duty of good faith and loyalty to N&R.

The trial court nonetheless declined to award damages to N&R. Because neither SRP nor any of Thakkar's other loaning entities were party to the lawsuit, the court held that N&R had failed to establish that monies representing the outstanding debt were advanced from itself, as opposed to one of Thakkar's other various entities. Further, the trial court held that, to the extent that the terms of the Operating

---

[2] The calculation of the outstanding principal balance depends upon whether the $778,504.73 payment made pursuant to the modified agreement represents a loan repayment or a profit distribution. The trial court held that the distribution constituted a payment on the loan, although there are some inconsistent references to SRP's outstanding principal debt in the order. In light of the remand to reconsider damages in this case, we need not resolve this issue.

[3] Of that total, the trial court characterized $778,504.73 as "profit distributions" and $120,961.12 as an "improperly retained payment" for a specific condominium unit.

6

Agreement were not followed, the parties had mutually departed from the terms of the contract through years of agreed-upon conduct, therefore N&R could not recover a damage award based upon the breach of its provisions. The trial court expressly noted that its holding did not prevent any of Thakkar's other various entities from asserting a claim against Sechler or SRP.

1. N&R challenges the trial court's holding that it failed to prove, and therefore was not entitled to recover, damages. Its argument on this front is two-fold. First, N&R contends that the trial court's ruling amounts to a finding that SRP and Thakkar's other business entities were indispensable parties to the lawsuit, a conclusion which it disputes. Second, N&R argues that the stipulated accounting record proves that its loan was not repaid and establishes that it was, in fact, damaged by Sechler's wrongful conduct. We will address each argument in turn.

(a) Proof of damages is an essential element to both a claim for breach of contract[4] and a claim for breach of a fiduciary duty.[5] A failure to prove damages is fatal to a plaintiff's claim.[6]

The stipulated accounting shows that the Project was funded through six of Thakkar's various business entities, one of which was N&R. While those various entities loaned SRP a total of $8,515,495.97 toward the Project over a period of years, N&R advanced only $1,387,289.79 of that total. Over the course of the Project, SRP repaid a total amount of $6,660,484.82 of the monies loaned to it.

---

[4] "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Punctuation omitted.) *Norton v. Budget Rent A Car System, Inc.*, 307 Ga. App. 501, 502 (705 SE2d 305) (2010). See OCGA § 13-6-1 ("Damages are given as compensation for the injury sustained as a result of the breach of a contract.").

[5] "Establishing a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Punctuation omitted.) *Wells Fargo Bank, N.A. v. Cook*, 332 Ga. App. 834, 842 (1) (b) (775 SE2d 199) (2015).

[6] See *Corrosion Control, Inc. v. William Armstrong Smith Co.*, 157 Ga. App. 291, 292 (277 SE2d 287) (1981) ("In a suit for damages for breach of contract, the plaintiff must allege and prove both the breach and the damage . . . ."); see *Conner v. Hart*, 252 Ga. App. 92, 94-95 (1) (a) (555 SE2d 783) (2001) (affirming the trial court's grant of directed verdict to defendant based on plaintiff's failure to establish damages flowing from her business partner's alleged breach of fiduciary duty).

The trial court did not err by holding that N&R, the sole named plaintiff to the lawsuit, was entitled to recover only those damages that it proved it suffered as a result of Sechler's wrongful conduct, *i.e.* the funds that it—not another Thakkar entity—loaned to the Project that should have been repaid before profits to Sechler were distributed. The trial court's holding does nothing more than require N&R to establish a prima facie case of breach of contract and breach of fiduciary duty; any argument by N&R that the trial court's ruling was based upon a finding that certain entities were indispensable parties to the lawsuit is misplaced.

(b) N&R contends that the trial court erred by holding that it failed to prove that SRP's unpaid debt included funds that had been loaned specifically by N&R. In light of the stipulated accounting, we agree.

The accounting stipulated by the parties and relied on by the trial court shows that while N&R loaned $1,387,289.79 to SRP, only $189,531.69 of the more than $6.6 million funds repaid were diverted to N&R. It follows that the undisputed evidence establishes that N&R has an outstanding loan balance of $1,197,758.10, and the trial court erred by holding otherwise.

2. The trial court explicitly found that Sechler breached his fiduciary duty to N&R "by paying himself 'profit' distributions when no such 'profit' existed for SRP"

9

and by paying New South unauthorized commissions and fees without the approval of N&R. But in addition to holding that N&R failed to prove damages to itself, the trial court held that the parties' mutual departure from the terms of the Operating Agreement and N&R's failure to give notice of its intention to rely on the contract terms precluded N&R's recovery of damages.

Under Georgia law, the doctrine of mutual departure is a defense to a breach of contract action.[7] Nevertheless, a managing member of an LLC owes a fiduciary duty to both the LLC and any other company member that is independent from his or

---

[7] See OCGA § 13-4-4 ("Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice."); *Morrison v. Roberts*, 195 Ga. 45, 46 (2) (23 SE2d 164) (1942) ("[W]here parties, in the course of the performance of a contract, depart from its terms and pay or receive money under such departure, a modification by way of a quasi new agreement will be implied . . . .").

her contractual duties.[8] As such, a breach of that duty may give rise to liability separate and apart from that stemming from a contractual breach.[9]

In light of our holding in Division 1 (b) that the stipulated accounting proves that N&R's loan to SRP was not fully repaid during the time that Sechler was improperly distributing company funds to himself and his brokerage firm, we remand this case to the trial court in order to consider whether N&R is entitled to recover damages for Sechler's breach of his fiduciary duty to N&R and, if so, in what amount.

---

[8] See OCGA § 14-11-305 (1) ("In managing the business or affairs of a limited liability company . . . [a] member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances."); *Internal Medicine Alliance, LLC v. Budell*, 290 Ga. App. 231, 236 (4) (659 SE2d 668) (2008) ("Managing members of an LLC owe fiduciary duties to the LLC and its member investors.").

[9] See OCGA § 14-11-305 (4) ("[A] member or manager has [certain] duties (including fiduciary duties) and liabilities relating thereto to a limited liability company or to another member or manager. . . ."); *Northwest Plaza, LLC (MI) v. Northeast Enterprises, Inc.*, 305 Ga.App. 182, 191-92 (3) (b) (699 SE2d 410) (2010) ("It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him.") (punctuation omitted).

In so doing, we note that the defense of mutual departure from the contractual terms of the Operating Agreement does not necessarily preclude such a recovery.

On remand, if the trial court awards damages to N&R, it should consider whether a recovery of any portion of those damages is barred by the statute of limitation. "Georgia has no specific statute of limitation for breach of fiduciary duty claims. Instead, we examine the injury alleged and the conduct giving rise to the claim to determine the appropriate statute of limitation."[10] We further note that "the statute of limitation for a cause of action for breach of fiduciary duty is triggered by a wrongful act accompanied by any appreciable damage,"[11] and that "each act of alleged breach of fiduciary duty that causes damage creates a new cause of action for that specific act."[12] To the extent that N&R's breach of fiduciary duty claims arise out of the Operating Agreement, a six-year statute of limitation would apply.[13]

---

[10] *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 38 (3) (b) (766 SE2d 497) (2014).

[11] (Punctuation omitted.) Id. at 39 (3) (b).

[12] Id.

[13] See id. (applying a six-year limitation period for breach of fiduciary duty claims arising out of a partnership dispute and citing cases in support).

12

*Judgment affirmed in part, vacated in part, and case remanded. Phipps, P. J., and Rickman, J., concur.*