**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 20, 2020**

# In the Court of Appeals of Georgia

A20A1268. OWENS v. NOVAE, LLC.

MARKLE, Judge.

After Justin Owens left Novae, LLC, the company he had formed with Reco McDaniel and several others, Novae filed suit against him for breaching the operating agreement. The trial court denied Owens's motion for summary judgment, and Owens filed this interlocutory appeal, arguing that he did not breach the agreement and that Novae had not shown it suffered any lost profits. For the reasons that follow, we affirm in part and reverse in part.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, [Owens], as the moving party, must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of

the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation omitted.) *In/Ex Systems, Inc. v. Masud*, 352 Ga. App. 722, 723 (2) (835 SE2d 799) (2019).

So viewed, the record shows that, in 2014, Owens and McDaniel formed Novae, a multi-level marketing company that provides financial education and direct sales of products to its customers and members. Customers pay monthly subscription fees to access the products and training opportunities and earn money by selling the products themselves and bringing in other subscribers.

Owens was the vice president of sales, and his duties included overseeing development of new products, creating and managing vendor relationships, directing distribution of products, overseeing independent sales representatives, hiring and training sales employees, and ensuring customer satisfaction. The operating agreement required the members to (1) devote time and attention to the business and to carry out their duties; (2) maintain a duty of loyalty that prevented them from entering into any competing business; and (3) maintain the confidentiality of company information.

2

Over the next few years, Owens brought new products and services into the business. But in 2016, due in part to a reduction in sales, McDaniel arranged a joint venture with another marketing company called myEcon. MyEcon did not market all of the products Novae had offered. As part of the agreement, myEcon guaranteed Novae profits of $20,000 a month for the first year, to be divided among McDaniel, Owens, and another member.

In 2017, Owens started to have concerns about McDaniel's leadership of Novae and the financial structure of the company, and he requested an audit of the company's books. Around this same time frame, McDaniel complained that Owens was not performing his duties as the vice president of sales, and he spoke with Owens about the issue. Owens informed him that he was not being paid enough because his income was subject to a monthly cap, and consequently he would limit his input into the company as well.

The audit Owens requested was never completed, and Owens decided to leave Novae in August 2017. A few weeks before he informed Novae that he was leaving, Owens signed up as a customer of IML, another multi-level marketing company that provided education and training in foreign currency exchange.

Novae filed a breach of contract suit against Owens, alleging that he breached the operating agreement by failing to complete his duties as vice president of sales, and by working for a competing company, soliciting Novae members to do the same, and revealing confidential information about Novae's compensation plan and marketing strategy. In the complaint, Novae sought declaratory and injunctive relief, as well as lost profits and attorney fees.[1]

Owens moved for summary judgment, arguing that he did not breach the agreement and contending that the claim for lost profits was purely speculative. Owens did not otherwise address the claim for injunctive relief. In support of his motion, Owens submitted affidavits from various other members of Novae to show that he had performed his duties, that IML was not a competitor of Novae, and that Novae was losing money before it joined myEcon.

Novae responded with affidavits of other company members, detailing Owens's failure to complete his duties, stating that IML was a competitor of Novae, and

---

[1] Novae also alleged that Owens breached the agreement by failing to give proper notice of his departure, and engaging in wrongful conduct to its detriment. But it has abandoned those claims during the course of the litigation by offering no argument or evidence related to them. See *Sommerfield v. Blue Cross & Blue Shield of Ga., Inc.*, 235 Ga. App. 375, 376, n.1 (509 SE2d 100) (1998); Court of Appeals Rule 25 (c) (2). For reasons discussed infra, we cannot conclude, on this record, that the claim for injunctive relief was likewise abandoned.

alleging that Owens had solicited its members and divulged confidential information about Novae's finances. McDaniel also gave deposition testimony that he became dissatisfied with Owens's performance around May of 2017, and he spoke with Owens about his concerns. He explained that Owens did not oversee any new developments or create any vendor relationships between May and August of that year. Instead, Owens spent his time working on programs that benefitted his other companies. McDaniel further alleged that Owens disclosed his salary and other information about Novae's finances, and used trade secrets, such as how he learned to market the business, for the benefit of IML.[2] McDaniel then explained how IML was a competitor of Novae, basing his belief on the fact that both companies were multi-level marketers that provided training and seminars.

As to damages, McDaniel stated in his deposition that Novae lost $30,000 due to the decline in commissions, using June through September 2017 as a benchmark.

---

[2] Owens submitted his own affidavit in reply to Novae's response. Novae moved to strike Owens's affidavit. It does not appear that the trial court ruled on that motion, nor does it appear that it considered Owens's affidavit when it denied the motion for summary judgment. Novae asserts in its appellate brief that we should not consider Owens's affidavit because it was untimely filed. Because the trial court did not rule on the motion to strike Owens's affidavit, we will not consider that issue on appeal. *CDP Event Svcs. v. Atcheson*, 289 Ga. App. 183, 187 (2) (656 SE2d 537) (2008).

He explained that he calculated that amount based on revenue for those months – $6,500 in June, $6,500 in July, $8,700 in August, and $7,600 in September – and the loss of the $20,000 monthly income from myEcon once Owens left the company in August 2017. He admitted, however, that the loss of revenue could have other causes, such as other members who had also left Novae. He also pointed to a t-shirt that Owens sold to Novae's customers that Owens offered for sale on his own websites after he left the company, and claimed that the money Owens earned from the sale of the shirts should be included as Novae's lost profits. Although McDaniel admitted that he could not determine how much Novae lost from t-shirt sales, he opined it was about $10,280.

In a subsequent affidavit, McDaniel averred that Novae had a history of profitability prior to Owens's departure, and that the company had lost $80,539.19 in revenue due to Owens's breach of the agreement. He submitted a spreadsheet he created that contained a list of numbers purporting to show that amount of lost profits.[3]

---

[3] We do not consider Owens's argument that McDaniel's affidavit is improper because Owens did not object to it in the trial court, and he raises this issue for the first time on appeal. *Nugent v. Myles*, 350 Ga. App. 442, 446 (1) (b) (829 SE2d 623) (2019).

Novae also submitted various tax returns.[4] For 2015, Novae listed a total income of $1,795,867 and a net income of $17,853. In 2016, Novae showed a total income of $1,230,108 and a net income of $4,838. For 2017, the total income was $357,171 with a net income of $28,247.

Following a hearing at which the trial court did not address the request for an injunction, the trial court denied the motion for summary judgment. It then certified its order for immediate review, and, after this Court granted the interlocutory application, this appeal followed.

On appeal, Owens argues that the trial court erred in denying his motion for summary judgment because he did not breach the agreement; the operating agreement does not permit recovery from a member for lost profits; and any claim of lost profits is purely speculative and based on hearsay.[5] Although we conclude that there was a

[4] Owens argued that the tax returns were inadmissible evidence because they were incomplete. We need not address the admissibility of these documents, however, because even if we consider them, there is insufficient evidence to establish lost profits.

[5] In its appellate brief, Novae argues for the first time that Owens breached his fiduciary duty under paragraph 50 of the operating agreement by failing to perform his sales obligations, separate from his breach of the operating agreement as alleged in the complaint. But in its complaint, it alleged only breach of contract. These claims are distinct, *Niloy & Rohan, LLC v. Sechler*, 335 Ga. App. 507, 512 (2) (782 SE2d 293) (2016), and we do not consider this argument raised for the first time on appeal.

7

factual question regarding whether Owens was in breach, we agree that Novae failed to establish lost profits with reasonable certainty as is necessary to survive a motion for summary judgment as to these damages.

1. Before we consider the merits of Owens's arguments, we note that Owens's motion for summary judgment did not address the claims for declaratory or injunctive relief as alleged in the complaint. Although he did not style his motion as one for *partial* summary judgment on the issue of breach and damages, we look at the content of the motion and not its nomenclature. *9677, LLC v. Dwarf House, Inc.*, 331 Ga. App. 287, 289 (1) (771 SE2d 1) (2015).

In the complaint, Novae requested an injunction for breaches of the non-compete and confidentiality clauses. Owens proffered no argument regarding injunctive relief in his motion for summary judgment. At the hearing on the summary judgment motion, Owens asserted that Novae had not pursued its request for injunctive relief, but there is no other mention of the injunction during that hearing, nor was there a hearing on the merits of the request for injunctive relief. See OCGA

---

*Nugent*, 350 Ga. App. at 446 (1) (b). In any event, Novae's failure to establish damages would be fatal to that claim as well. See *Niloy & Rohan, LLC*, 335 Ga. App. at 510 (1) (a) (proof of damages is an element of both a breach of contract and breach of fiduciary duty claim).

8

§ 9-11-65 (a); *A & D Asphalt Co. v. Carroll & Carroll of Macon, Inc.*, 238 Ga. App. 829, 830-831 (1) (520 SE2d 499) (1999) (trial court may, with parties' permission, consolidate hearing on the merits of a breach of contract claim with request for injunctive relief); Cf. *Abel & Sons Concrete, LLC v. Juhnke*, 295 Ga. 150, 156 (757 SE2d 869) (2014) (lack of notice to parties that trial court would consider injunction at the hearing on the motion for summary judgment prevented trial court from issuing one). And, notably, the trial court's order does not grant or deny the request for an injunction; there is no other order addressing an injunction in the record; and neither party has raised that issue on appeal. As a result, we construe Owens's motion as a motion for partial summary judgment as to breach and damages only, and conclude that the issue of injunctive relief remains pending before the trial court.[6]

With regard to Owens's argument that he was not in breach of the operating agreement, the trial court correctly found that there is conflicting evidence in the record, in the form of affidavits and deposition testimony, that creates a factual

---

[6] Novae also requested declaratory relief. But Novae would not be entitled to a declaratory judgment if it had a remedy at a law for the alleged breaches. See *Pinnacle Benning, LLC v. Clark Realty Capital, LLC*, 314 Ga. App. 609, 612-613 (1) (724 SE2d 894) (2012) (no right of action where company sought declaratory relief for prior breach of contract rather than future action, noting that company could get complete relief in breach of contract action).

9

question as to whether Owens was in breach of the various contractual provisions. See *Greenstein v. Bank of Ozarks*, 326 Ga. App. 648, 651-652 (2) (757 SE2d 254) (2014) (addressing the criteria for affidavits to be considered admissible evidence to defeat summary judgment). As such, the trial court properly denied the motion for summary judgment as it pertains to the issue of breach.

We now turn to Owens's arguments on appeal regarding Novae's claim for damages.

2. Under Georgia law, a contract, such as the operating agreement at issue here, may contain restrictive covenants that limit competition and confidentiality. See OCGA § 13-8-53. To establish a claim for breach of the operating agreement, Novae had to prove both that Owens was in breach of the provisions and that Novae suffered damages – here, lost profits – as a result. *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (1) (669 SE2d 179) (2008). As noted above, there is a factual question regarding breach. But, as to damages,

> [i]n Georgia, the general rule as to the recoverability of lost profits as an item of damages is that the expected profits of a commercial venture are not recoverable as they are too speculative, remote, and uncertain. Nevertheless, when the type of business and history of profits make the calculation of profits reasonably ascertainable, lost profits may be recovered. Thus, generally speaking, lost profits may be recovered by a

10

business only if the business has a proven track record of profitability. And although the amount of damages need not be calculated with exact mathematical certainty, a litigant must nonetheless establish lost profits with a reasonable degree of certainty.

(Citations and punctuation omitted.) *EZ Green Assocs., LLC v. Ga.-Pacific Corp.*, 331 Ga. App. 183, 187-188 (2) (770 SE2d 273) (2015). Additionally, as we have explained,

it is well settled that anticipated profits are too speculative and uncertain to be recoverable unless they are based on an actual track record of sales. And this requirement is based on the rationale that the profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford a basis for the computation of damages.

(Citations and punctuation omitted.) *EZ Green Assocs., LLC*, 331 Ga. App. at 188-189 (2); see also *Shaw v. Ruiz*, 207 Ga. App. 299, 304 (11) (428 SE2d 98) (1993) ("To recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery.") (punctuation omitted).

Here, Novae has not shown the amount of lost profits was anything other than speculation, and it offered no evidence to show that Owens's departure was the cause of any lost profits. First, even assuming that the tax records were admissible evidence, these documents fall short of the necessary proof to establish lost profits to avoid summary judgment because those records show that the net income actually increased from 2016 to 2017.

McDaniel's testimony only reinforces the lack of proof for the amount of lost profits here. At various points in his testimony and affidavits, he opined that the company lost $30,000 due to Owens's conduct, and at other times he claimed that the amount of lost profits was over $80,000. But the only evidence McDaniel submitted to confirm these figures was his own spreadsheet, which he prepared based on tax returns and other unspecified records.

But even if the evidence was sufficient to demonstrate lost profits, there is no evidence in the record to connect the decrease in revenue to Owens's departure. Importantly, McDaniel admitted that there could be other causes for the decline in revenue. And he acknowledged that the departure of other Novae members in that same time frame could have caused the decrease in revenue.

In short, the evidence is simply insufficient to establish lost profits with any specificity or certainty, and Novae has not shown that any loss in profits was the result of Owens's alleged breach of the operating agreement. *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 785-786 (3) (a) (613 SE2d 112) (2005); see also *Pounds v. Hosp. Auth. of Gwinnett County*, 197 Ga. App. 598, 599 (1) (399 SE2d 92) (1990) (plaintiff must provide "information or data sufficient to enable [the trier of fact] to estimate the amount of the loss with reasonable certainty.") (citation and punctuation omitted); *Bearoff v. Craton*, 350 Ga. App. 826, 836 (2) (830 SE2d 362) (2019); *Coffee Butler Svcs., Inc. v. Sacha*, 208 Ga. App. 4, 7 (430 SE2d 149) (1993) (summary judgment proper where there was only supposition about the reasons for the loss of accounts); *Grossberg v. Judson Gilmore Assoc., Inc.*, 196 Ga. App. 107, 109 (2) (395 SE2d 592) (1990) ("there is no evidence of either net profits or data from which appellant's net profits from the mailings could be calculated. . . . and thus no evidence from which an inference could be drawn that his net profits had declined[.]"); see also *Goddard v. City of Albany*, 285 Ga. 882, 887 (6) (684 SE2d 635) (2009) (hearsay, opinions, and conclusions are inadmissible on summary judgment). As a result, on this record, Owens was entitled to summary judgment on

the claim for lost profits, and we reverse in part the trial court's denial of Owens's motion as it pertains to these damages.

In summary, there remains a factual question as to whether Owens was in breach of the operating agreement, and thus he was not entitled to summary judgment on that issue. Novae may seek nominal damages as a result of the alleged breach. *6428 Church Street, LLC v. SM Corrigan, LLC*, 352 Ga. App. 437, 444 (3) (834 SE2d 603) (2019).However, summary judgment was warranted on the issue of lost profits. We therefore affirm in part and reverse in part. The claim for injunctive relief remains pending in the trial court. We express no opinion on the merits of that claim and leave the issue for the trial court to address in the first instance.

*Judgment affirmed in part and reversed in part. Reese, P. J., and Colvin, J., concur*.