SUPREME COURT OF GEORGIA
Case No. S22A0144


April 19, 2022

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

ERIN C. McALISTER v. WENDI L. CLIFTON.

On January 11, 2022, the Motion for Reconsideration filed in this case was granted and the opinion of this Court issued on December 14, 2021, was vacated and withdrawn from the files. The attached opinion is substituted therefore. Any motion for reconsideration of the substitute opinion must be filed within 10 days of the date of this order. See Supreme Court Rule 13.

*All the Justices concur, except Boggs, P. J., and McMillian, J., disqualified. Bethel, J., not participating.*

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 19, 2022

S22A0144.  MCALISTER V. CLIFTON.

ELLINGTON, Justice.

Erin McAlister appeals from trial court orders awarding Wendi Clifton, McAlister's former domestic partner, visitation rights to McAlister's adopted daughter, Catherine, pursuant to the equitable caregiver statute, OCGA § 19-7-3.1.[1] McAlister contends the trial court erred in declaring the statute "constitutional, both facially and as applied to [Clifton]," as well as finding that Clifton had standing to seek visitation rights as Catherine's equitable caregiver. McAlister also contends that the trial court erred in denying her counterclaim for breach of a settlement agreement that the parties signed when they separated. Because Catherine is now an adult, having turned 18 years old prior to the docketing of this

---

[1] Clifton did not formally adopt Catherine and she does not contend that she is Catherine's legal parent.

appeal, McAlister's challenge to the award of visitation rights is moot.[2] Therefore, we vacate those portions of the court's orders addressing the constitutionality of the equitable caregiver statute, as well as the award of visitation, and we remand the case to the trial court with direction to dismiss Clifton's claim for visitation, which was based on the statute. However, because the record supports the trial court's finding that McAlister failed to carry her burden of proving any damages from Clifton's alleged breach of the settlement agreement, the court did not err in denying McAlister's counterclaim. Consequently, we affirm that portion of the court's judgment.

The record shows that, on January 25, 2021, the trial court entered an order denying McAlister's motion to dismiss Clifton's

---

[2] McAlister moved the trial court to set aside a portion of the final order granting Clifton visitation after Catherine's eighteenth birthday, citing *Francis-Rolle v. Harvey*, 309 Ga. App. 491, 492 (1) (710 SE2d 659) (2011). Clifton conceded that her right to visitation terminated by operation of law when Catherine reached the age of majority, and the trial court granted the motion. Thus, as discussed below, this portion of the final order is already a nullity.

petition for visitation with Catherine, rejecting McAlister's challenge to the constitutionality of OCGA § 19-7-3.1.[3] Also on January 25, the trial court issued its "Final Order on Equitable Caregiver," in which it found that Clifton had satisfied the statute's criteria for standing as an equitable caregiver, and it awarded her "parenting time" with Catherine. The orders did not grant Clifton any parental rights beyond visitation. McAlister appealed to the Court of Appeals, which transferred the case to this Court.[4]

---

[3] The equitable caregiver statute provides that a court may adjudicate an individual to be a child's equitable caregiver if, among other things, the individual shows by clear and convincing evidence that he or she has:

> (1) Fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life;
>
> (2) Engaged in consistent caretaking of the child;
>
> (3) Established a bonded and dependent relationship with the child, which relationship was fostered or supported by a parent of the child, and such individual and the parent have understood, acknowledged, or accepted that or behaved as though such individual is a parent of the child;
>
> (4) Accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and
>
> (5) Demonstrated that the child will suffer physical harm or long-term emotional harm and that continuing the relationship between such individual and the child is in the best interest of the child.

OCGA § 19-7-3.1 (d).

[4] The Supreme Court of Georgia has exclusive jurisdiction over cases

3

Thereafter, we directed the parties to file supplemental briefs regarding whether this appeal is moot. See *In the Interest of M. F.,* 305 Ga. 820 (828 SE2d 350) (2019) ("Mootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim." (citation and punctuation omitted)); *Byrd v. Goodman,* 192 Ga. 466, 466 (15 SE2d 619) (1941) ("[I]t is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction." (citation and punctuation omitted)).

1. Clifton contends that McAlister's challenge to the constitutionality of OCGA § 19-7-3.1 is moot because Catherine is now legally an adult and no longer in the custody or control of her parent. We agree.

> When the resolution of a case would be tantamount to the determination of an abstract question not arising upon existing facts or rights, then that case is moot. When the remedy sought in litigation no longer benefits the party seeking it, the case is moot and must be dismissed.

---

challenging the constitutionality of a statute. See Ga. Const. of 1983, Art. VI, Sec VI, Par. II (1).

(Citations and punctuation omitted.) *M. F.,* 305 Ga. at 820. In a case factually similar to this case, the Court of Appeals explained why it was required to dismiss as moot an appeal from a custody order:

> The child was 17 years old when the [trial] court granted custody to Harvey and turned 18 years of age shortly after the appeal was docketed. Because at 18 years the child has reached the age of legal majority and is no longer subject to the custody order, this issue is moot. OCGA § 39-1-1 (a) (age of legal majority is 18 years); OCGA § 19-7-1 (a) (at age 18 child no longer in the custody or control of either parent). To the extent Francis-Rolle claims the custody award was error, the appeal is dismissed.

*Francis-Rolle v. Harvey*, 309 Ga. App. 491, 492 (1) (710 SE2d 659) (2011).[5]

McAlister argues that her challenge is not moot because Clifton's "status" as an equitable caregiver continues beyond Catherine's eighteenth birthday, which presents a question concerning Clifton's existing parental rights. McAlister has cited no law in support of this argument, and the trial court made no finding in either order that Clifton had continuing parental rights as an

---

[5] As explained below, the better practice would have been for the Court of Appeals to vacate the trial court's order rather than simply dismissing the appeal from the order.

equitable caregiver. Rather, in its final order, the court found that Clifton had "standing" to seek "parenting time" as an equitable caregiver because she had satisfied the statutory criteria for such an award of visitation. The court did not award Clifton any rights beyond visitation, and the visitation award has since terminated by operation of law. See *Francis-Rolle*, 309 Ga. App. at 492 (1). Hence, the portion of the trial court's final order awarding visitation is a nullity. McAlister also argues that Clifton is using the fact that she was previously awarded visitation as an equitable caregiver to gain an advantage in a guardianship matter involving her daughter in the Probate Court of DeKalb County.[6] However, McAlister has not shown that the trial court's final order granting Clifton parenting time with Catherine would have any collateral consequence in the pending guardianship matter.[7] See *In the Interest of I. S.,* 278 Ga.

---

[6]   Although Catherine is now an adult, McAlister contends that her daughter is in need of a guardian to protect her health and safety.

[7] Who should act as the guardian of an incapacitated adult is for the probate court to determine. See OCGA § 29-4-1 et seq. The order of preference for selecting a guardian is set forth in OCGA § 29-4-3 (b). Preference is given to a "parent" over a "friend, relative, or other individual," OCGA § 29-4-3 (b)

859, 862 (607 SE2d 546) (2005) (a matter does not become moot if adverse collateral consequences continue to plague the affected party).

McAlister also argues that this Court has recognized certain public policy "exceptions" to the doctrine of mootness and that we should apply those exceptions to hold that her challenge to the constitutionality of the statute is not moot. To be clear, although we have sometimes used the word, there are no true "exceptions" to the mootness doctrine, which is a jurisdictional doctrine rooted in the common law and the separation of powers; rather, "we have recognized circumstances where cases that may appear to be moot are nonetheless viable due to the particular nature of the litigated issue." *M. F.,* 305 Ga. at 821. As we have explained, "a case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights." (Citation and punctuation omitted.) *Collins v. Lombard Corp.,* 270 Ga. 120,

(7), although the probate court may deviate from the order of preference for good cause. See OCGA § 29-4-3 (a). "Equitable caregiver" is not listed in OCGA § 29-4-3 (b).

7

121 (1) (508 SE2d 653) (1998). So, when a case contains an issue that is capable of repetition yet evades review, the issue is not moot "because a decision in such a case would be based on existing facts or rights which affect, if not the immediate parties, an existing class of sufferers." (Citation and punctuation omitted.) Id. at 121-122 (1). Contrary to McAlister's argument, this case is not one that affects an existing class of persons suffering harm as a result of the statute. While the question of the constitutionality of the equitable caregiver statute may well be raised again, there is no reason to believe that it will evade review. Any time a person seeks custody or visitation pursuant to the equitable caregiver statute, the opposing party may challenge the constitutionality of the statute and the court may consider it, just as the trial court did in this case. See id. at 122 (2) (the underlying issue of the constitutionality of a statute imposing a tax could be raised by other parties in a suit for a refund).

McAlister also argues that this case presents an issue of such significance that the public interest demands that we address the constitutionality of the statute immediately. She relies on *Hopkins*

8

*v. Hamby Corp.*, 273 Ga. 19 (538 SE2d 37) (2000), in which we noted that

> [o]ther states have adopted a rule that permits them to decide an appeal in a moot case where the case contains an issue of significant public concern or an issue that might avert future litigation. The courts find justification for deciding issues raised in moot cases when (1) the public interest will be hurt if the question is not immediately decided; (2) the matter involved is likely to recur frequently; (3) it involves a duty of government or government's relationship with its citizens; and (4) the same difficulty that prevented the appeal from being heard in time is likely to again prevent a decision.

(Footnotes omitted.) Id. Assuming *Hopkins* is authority for a "significant public concern" rationale that could support the continuing viability of McAlister's constitutional challenge to the equitable caregiver statute,[8] McAlister has failed to show that the

---

[8] In *Collins*, we rejected the creation of ad hoc public policy rationales for rendering legal issues viable that would ordinarily be considered moot as "unnecessary and undesirable in that they foster uncertainty in the law and inappropriately serve to expand the jurisdiction of the court applying such exceptions[.]" *Collins*, 270 Ga. at 122-123 (3). And this Court has yet to expressly endorse the public policy rationale *alone* as a basis for considering an otherwise moot issue. In *Perdue v. Baker*, 277 Ga. 1 (586 SE2d 606) (2003), for example, although we noted that the case was of "significant public concern," we determined that the case was not moot for a number of reasons, including that the issue presented was one capable of repetition yet had evaded review. See id. at 3. See also *Ricks v. State*, 301 Ga. 171, 187 (4) (b) n.16 (800

9

challenge presented satisfies the criteria set forth in *Hopkins* –

especially when trial courts are able to address the constitutionality

of the statute when a petition is filed pursuant to it. See id.

Finally,

> [w]hen a civil case becomes moot pending appellate
> review due to happenstance – circumstances not
> attributable to the parties, like the mere passage of time
> – rather than by settlement of the dispute or voluntary
> cessation of the challenged conduct by the prevailing
> party below, the better practice is to vacate the judgment
> under review and remand with direction that the case be
> dismissed by the trial court.

(Citations omitted.) *Babies Right Start, Inc. v. Georgia Dep't of Pub.*

*Health,* 293 Ga. 553, 557 (2) (d) (748 SE2d 404) (2013) (vacating a

judgment disqualifying the appellant from participating in a welfare

program when the disqualification expired after a year, which

mooted the appeal through happenstance). Vacating the judgment,

instead of simply dismissing the appeal, has the effect "of clearing

the field and preventing a judgment, unreviewable because of

SE2d 307) (2017) (Appellant's "core claim is a matter capable of repetition yet evading review," though it was also a matter of significant public concern. (citations and punctuation omitted)).

10

mootness, from spawning any legal consequences." (Citations and punctuation omitted.) Id. Accordingly, we vacate those portions of the trial court's orders regarding the constitutionality of OCGA § 19-7-3.1 as moot and remand the case to the trial court with direction to dismiss Clifton's claim for visitation, which was based on the statute. We express no opinion on the merits of McAlister's challenge to the constitutionality of the equitable caregiver statute.

2. In three related claims of error, McAlister also contends that the trial court erred in denying her counterclaim for sums Clifton allegedly owed her pursuant to the settlement agreement for Catherine's education. For the following reasons, these claims of error are without merit.

Specifically, McAlister contends that the trial court erred in denying her counterclaim for $74,133.96 – the amount she claims Clifton owed her for three years of Catherine's tuition, less scholarships. McAlister argues that the trial court's judgment was premised on an erroneous finding that the settlement agreement was unenforceable because it lacked consideration. She also argues

that the court erred in requiring her to prove that she had, in fact, paid for Catherine's tuition.

Although the trial court stated in its final order that the parties' settlement agreement contained no valid consideration, the lack of consideration was not the sole basis for the court's judgment. Rather, the court ruled that "[McAlister] had failed to establish the necessary elements of her counterclaim" and then proceeded to recount how McAlister had failed to carry her burden of proving any damages resulting from the alleged breach.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citations and punctuation omitted.) *Norton v. Budget Rent A Car System, Inc.*, 307 Ga. App. 501, 502 (705 SE2d 305) (2010). Proof of damages is an essential element to a claim for breach of contract, and a failure to prove damages is fatal to a plaintiff's claim. See *Niloy & Rohan, LLC v. Sechler*, 335 Ga. App. 507, 510 (1) (a) (782 SE2d 293) (2016). See also OCGA § 13-6-1 ("Damages are given as compensation for the

injury sustained as a result of the breach of a contract.").

The settlement agreement provides, in pertinent part:

[McAlister] shall use her best efforts to apply for all scholarships for which the child may be eligible for the cost of private special schooling and shall furnish a copy of such application to [Clifton] no later than ten (10) days of its submission. [Clifton] shall pay the cost of private special schooling for Catherine to the extent such costs are not covered by scholarships up to a maximum amount of $32,000.00 until the child reaches the age of 18 years. She shall make timely payments in accordance with school's payment schedule.

The record shows that Clifton did, in fact, stop sending McAlister money for Catherine's tuition after McAlister denied Clifton visitation with Catherine in June 2015. At about the same time, McAlister stopped sending Clifton any proof that she had incurred expenses for Catherine's tuition that were not covered by scholarships. Shortly thereafter, McAlister sued Clifton in a separate action for expenses owed pursuant to the settlement agreement, and she recovered a judgment on December 1, 2017, in the amount of $87,152.18 for "certain expenses of the child" incurred from 2015 through November 6, 2017. In the instant action,

McAlister sought "additional sums" that were payable pursuant to the settlement agreement after November 6, 2017.

Clifton testified that, after the 2017 judgment became final, she asked McAlister for proof that she had paid the expenses for which she had counterclaimed in the instant action, including any invoices, scholarship awards, cancelled checks, or credit card receipts, but McAlister did not provide the requested proof of payment. At trial, McAlister presented evidence that she had applied for scholarship money for Catherine's tuition, but she did not present evidence showing that she had paid any portion of Catherine's school tuition that was not covered by a scholarship. Instead, she presented a list of Catherine's expenses, including tuition, and testified that she had paid those items by check. When the court asked McAlister's lawyer if she had the documents supporting McAlister's payment of the listed expenses, she said "I don't have them." The trial court then asked McAlister whether she could retrieve cancelled checks or bank statements proving that she had paid for Catherine's tuition if the court stopped the hearing, and

14

she responded: "Probably not."

Although the principal of the school testified that Catherine's tuition had been paid in full, she could not testify as to who paid the tuition because she did not process the checks. Finally, when McAlister's attorney argued that her client's testimony that she paid Catherine's school tuition was sufficient proof of the amounts Clifton allegedly owed, the trial court informed counsel:

> It depends if I find her credible. I don't think you've complied with discovery and the audit requirement that [Clifton's attorney asked for], because . . . there's some concern about whether these providers are working in tandem with Ms. McAlister to the extent that she can't produce canceled checks or credit card receipts to show what she actually paid.

The record shows that McAlister worked at Catherine's school until three weeks before trial. That the court questioned McAlister's credibility is clear from the final order. The court stated: "[McAlister's] failure to present any evidence to support her counterclaim is especially perplexing given the amount of time which has passed between the filing of her counterclaim [and the final hearing], as well as the litigiousness of the parties since 2015."

Given that the record supports the trial court's finding that McAlister failed to prove any damages as a result of Clifton's breach of the settlement agreement, we discern no reversible error. See *Niloy & Rohan, LLC*, 335 at 510 (1) (a).

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur, except Boggs, P. J., and McMillian, J., disqualified, and Bethel, J., not participating.*

PETERSON, Justice, concurring.

The Court's opinion is a faithful application of our precedent, and so I join it in full. I write separately to express some doubt whether some of the precedent we apply today was rightly decided.

The Court's opinion states in dicta that "although we have sometimes used the word, there are no true 'exceptions' to the mootness doctrine, which is a jurisdictional doctrine rooted in the common law and the separation of powers." Slip op. at 7. This is a correct statement of our holding in *Collins v. Lombard Corp.* that "the notion of an exception to the mootness doctrine which would permit a court to consider a case notwithstanding that the case is moot is inconsistent with the concept of mootness as a jurisdictional matter." 270 Ga. 120, 122 (3) (508 SE2d 653) (1998). But the only authorities we cited for that proposition were the 1986 decision of our Court in *Chastain v. Baker*, 255 Ga. 432, 433 (339 SE2d 241) (1986), and the 1995 decision of the Court of Appeals in *In the Interest of I. B.*, 219 Ga. App. 268 (464 SE2d 865) (1995). I am doubtful that either case supported the proposition for which *Collins*

17

cited it.

In *Chastain*, we held that dismissal is mandatory when a case is moot. See 270 Ga. at 433. But we stated nothing about mootness being jurisdictional or a function of the separation of powers; instead, we simply cited OCGA § 5-6-48 (b) (3), which requires the dismissal of moot appeals.

As for *I. B.*, the Court of Appeals did hold that mootness was jurisdictional in a way that would be inconsistent with judicial creation of exceptions, but it relied heavily on a presumption that the Georgia judicial power extends only to live "cases" and "controversies." 219 Ga. App. at 269. For this critical proposition, the court offered two authorities. First, the Declaratory Judgment Act, which statutorily limits the authority of courts to grant declaratory judgments only to "cases of actual controversy." Id. And second, Article VI of the Georgia Constitution, in which, as the Court of Appeals construed the Article, "jurisdictional authority is given over 'cases.'" Id. But as I have already explained elsewhere, it is quite doubtful that the actual use of "case" in Article VI is a

18

limitation generally on judicial power in the way that the case-and-controversy language in Article III of the United States Constitution limits the federal judicial power. See *Black Voters Matter Fund Inc. v. Kemp*, 2022 WL 677669, at \*12 & n.23, 2022 Ga. LEXIS 54, at \*25-26 & n.23 (Mar. 8, 2022) (Peterson, J., concurring).

Indeed, *I. B.* pointed out at length the extent to which our mootness doctrine began to be imported from federal constitutional decisions in the 1970s. See 219 Ga. App. at 271-274. As I explained in *Black Voters Matter Fund*, before we import federal constitutional principles to Georgia's Constitution, we should first be confident that the federal law is consistent with the original public meaning of the relevant provision of the Georgia Constitution. Given that our Court was dismissing cases as moot long before the 1970s, see, e.g., *Cook v. Lowry*, 148 Ga. 516, 516 (97 SE 440) (1918) (dismissing appeal as moot after appellant's requested remedy was afforded during pendency of appeal), we ought to consider in an appropriate case the proper scope and nature of Georgia's mootness doctrine.